**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

NICOLA LIANTONIO, JR., on behalf of himself
and all others similarly situated,

                Plaintiff,

  - against -

JOEL W. LAVINTMAN D/B/A
GOGGINS & LAVINTMAN, P.A.,

                Defendant.

---

Case No. 2:11-cv-1292-SJF-AKT

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**PURSUANT TO FED. R. CIV. P. 12(c) OR, IN THE ALTERNATIVE,**
**FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

1584093

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTS .................................................................................................................................. 1

LEGAL ARGUMENT .......................................................................................................... 2

    I.    LEGAL STANDARD ................................................................................................ 2

        A.    Motion To Dismiss Standard Under Federal Rule 12(c) ................................ 2

        B.    Summary Judgment Standard Under Federal Rule 56 .................................... 4

        C.    Least Sophisticated Consumer Standard Under The FDCPA ........................ 5

    II.    DEFENDANT'S LETTER DID NOT VIOLATE THE FDCPA ................................ 6

        A.    Plaintiff is Seeking an Advisory Opinion ....................................................... 7

        B.    Minnesota Law Related To Service Charges For Dishonored Checks Should Govern In This Case ............................................................................. 7

        C.    Minnesota Law Authorizes The Imposition Of A $30 Service Charge For Dishonored Checks. Thus, The Letter Is Not False, Deceptive, Or Misleading ......................................................................... 9

    III.    PLAINTIFF'S CLAIMS ARE THE RESULT "OF AN INGENUOUS MISREADING" OF THE LETTER .............................................................................. 10

CONCLUSION ..................................................................................................................... 14

1584093

## INTRODUCTION

Defendant Goggins & Lavintman, P.A. ("Defendant"), incorrectly named Joel W. Lavintman d/b/a Goggins & Lavintman, hereby submits this memorandum of law in support of its motion to dismiss or, in the alternative, for summary judgment. The claims set forth in the putative class action complaint ("Complaint") filed by Nicola Liantonio, Jr. ("Plaintiff") are completely without merit and are the apparent result of a disingenuous reading of the collection letter upon which the Complaint is based.

## FACTS

Defendant is a law firm that specializes in the collection of debts from consumers. Answer, Ex. A, Affidavit of Joel Lavintman ("Lavintman Aff.") ¶ 4. Its place of business is located in Minnesota. *Id.* Defendant does not currently, nor has it ever maintained offices in any other state. *Id.*

On August 13, 2010, the date of the letter at issue in this matter, Defendant's policy and procedure with respect to debts placed with it for collection was that it would deposit all checks it received from debtors exclusively at one of several Wells Fargo Bank, N.A. ("Wells Fargo") branch offices, all located in Minnesota. *Id.* at ¶ 5. Defendant did not and does not deposit checks it receives from consumers at any banks or locations outside of Minnesota. *Id.*

Defendant presents all checks it receives from consumers for payment in Minnesota. *Id.* at ¶ 6. Further, Defendant only provides consumers with a Minnesota address for mailing payments to Defendant. *Id.* at ¶ 7. If a check received from a consumer and presented for payment at Wells Fargo is dishonored and returned to Defendant by Wells Fargo, a service charge of $30 is added to the returned check and, if warranted, Defendant seeks to impose additional civil penalties as permitted by Minn. Stat. § 604.113, Subd. 2. *Id.* at ¶ 8.

Plaintiff owed a debt to Midwest Recovery Fund ("MRF") in the amount of $296.77 ("Debt"). Compl. ¶ 3, Ex. A. Defendant, on behalf of MRF, sought to collect the Debt from Plaintiff. *Id.* at ¶¶ 3, 10. On or about August 13, 2010, Defendant mailed a collection letter ("Letter") to Plaintiff. *Id.* at ¶ 11. The Letter set forth the following:

> Notice: A service charge of $30 will be added on all returned checks to this office. Additional civil penalties may be imposed for nonpayment. Minn. Stat. § 604.113, Subd. 2.

*Id.* at ¶ 12, Ex. A.

On March 17, 2011, Plaintiff filed his Complaint. Doc. No. 1. In his Complaint, Plaintiff acknowledges that the language set forth above may be sufficient for Minnesota consumers. Compl. ¶ 13. However, Plaintiff alleges that because he is a New York resident, the language deceptively and falsely threatened that Defendant could impose a fee of $30.00 for a returned check when the maximum that could be imposed under New York law is $20.00. *Id.* at ¶ 16. Thus, Plaintiff alleges that the Letter violates sections 1692e, 1692e(5) and 1692e(10) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. *Id.* at ¶¶ 13-16.

## LEGAL ARGUMENT

**I.   LEGAL STANDARD.**

   **A.   Motion to Dismiss Standard Under Federal Rule 12(c).**

Pursuant to Federal Rule of Civil Procedure ("Federal Rule") 12(c), a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). A judgment on the pleadings is appropriate where a judgment on the merits is possible merely by considering the contents of the pleadings and attachments. *See Frerks v. Shalala*, 848 F. Supp. 340, 347-48 (E.D.N.Y. 1994).

In deciding a Federal Rule 12(c) motion, the court applies the same standard as that applicable to a motion under 12(b)(6). *See Ad-Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir. 1987). All factual

allegations are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995). However, while the pleading standard set forth in Federal Rule 8 is a liberal one, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (*quoting Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter…to state a claim to relief that is plausible on its face." *Id.* (*quoting Twombly*, 550 U.S. at 570). In meeting this "plausibility standard," the plaintiff must demonstrate more than a "sheer possibility" of unlawful action; pleading facts that are "merely consistent with a defendant's liability…stops short of the line between possibility and plausibility to entitlement of relief." *Id.* (*quoting Twombly*, 550 U.S. at 557).[1] The factual allegations of a complaint must be enough "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Legal conclusions "couched as factual allegations" are not accepted as true. *B.H. Papasan v. Allain*, 478 U.S. 265, 286 (1986).

---

[1] *See also Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007) ("Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice. To survive dismissal, the plaintiff must provide the grounds upon which [her] claim rests through factual allegations sufficient to raise a right to relief above the speculative level.") (internal quotations and citations omitted); *Gavish v. Revlon, Inc.*, 2004 WL 2210269 at *10 (S.D.N.Y. Sept. 30, 2004) ("[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not suffice to defeat a motion to dismiss.").

3

Judgment on the pleadings will be granted when the court determines that the plaintiff can prove no set of facts that would entitle him to relief. *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002). If, on a motion brought under Federal Rule 12(c), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

### B.     Summary Judgment Standard Under Federal Rule 56.

Pursuant to Federal Rule 56, a court shall grant summary judgment when the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials, show that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *see also Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Globecon Group*, 434 F.3d. at 170.

The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts….[T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)); *see also* Fed. R. Civ. P. 56(e). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment.

4

*Id.* at 247-48.  Therefore, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed.  *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted).  Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts."  *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

      C.      **Least Sophisticated Consumer Standard Under the FDCPA.**

Courts within the Second Circuit use the least sophisticated consumer standard to determine if the FDCPA has been violated.  *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2001));  *see also Turner v. Asset Acceptance*, 302 F.Supp.2d 56, 58 (E.D.N.Y. 2004) (*citing Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)).  The purpose of this standard is two-fold: "(1) [to] ensure the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) [to] protect debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices."  *Id.*

However, the least sophisticated consumer standard incorporates a "concept of reasonableness" that is presumed to guide even the most naive debtor.  *McStay v. I.C. System, Inc.*, 308 F.3d 188, 190-91 (2d Cir. 2002); *Clomon*, 988 F.2d at 1319.  Moreover, "even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care."  *Clomon*, 988 F.2d at 1319.

Whether or not a collection letter violates the FDCPA is a question of law.  *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2nd Cir. 2003) (upholding the district court's finding that the letter did not violate 15 U.S.C. §§ 1692e or 1692g as a matter of law).

## II. DEFENDANT'S LETTER DID NOT VIOLATE THE FDCPA.

Plaintiff asserts claims against Defendant under sections 1692e, 1692e(5), and 1692e(10) of the FDCPA. Those sections, generally, prohibit a debt collector from using false, deceptive or misleading representations or means in connection with the collection of a debt. *See* 15 U.S.C. § 1692e. In support of his claims, Plaintiff alleges that the following notice ("Notice") set forth in the Letter sent by Defendant to Plaintiff is false and deceptive:

> Notice: A service charge of $30 will be added on all returned checks to this office. Additional civil penalties may be imposed for nonpayment. Minn. Stat. § 604.113, Subd. 2.

Compl. ¶ 16. Specifically, Plaintiff alleges that Defendant, through the Notice, "deceptively and falsely threatened the plaintiff that the defendants [sic] could impose a fee of $30.00 [on returned checks] when the maximum that could be imposed [under New York law] is $20.00." *Id.* at ¶¶ 15-16.

As discussed below, Plaintiff's claims fail as his claims are nothing more than an attempt to obtain an advisory opinion, which is improper. Regardless, Plaintiff's claims also fail as the language at issue in the Letter is not false, deceptive or misleading. Minnesota law authorizes the imposition of a $30 service charge on dishonored checks while New York law caps the fee at $20. The outcome of this case therefore turns on whether the law of Minnesota or New York governs. Plaintiff suggests that Minnesota law related to service charges on dishonored checks cannot be applied to payments made by New York consumers, such as Plaintiff and, instead, New York law must govern. Plaintiff is incorrect. Minnesota law can and should apply in this case. Because the Notice fully complied with Minnesota law, the Letter is not false, deceptive or misleading. As such, Plaintiff's claims must fail.

### A. Plaintiff is Seeking an Advisory Opinion.

As a threshold matter, Plaintiff does not allege, nor can he allege, that he attempted to make a payment by check to Defendant. Thus, Plaintiff is, in reality, asking for an advisory opinion regarding whether Minnesota or New York law would apply to the hypothetical scenario where, after receiving the Letter, Plaintiff made a payment by check to Defendant, the check was dishonored, and Defendant imposed a $30 service charge on the returned check. The Court is prohibited from rendering such advisory opinions. *See United States Nat'l Bank v. Independent Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993) ("The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy, and a federal court lacks the power to render advisory opinions."). As such, Plaintiff's claims should be dismissed on this basis.

### B. Minnesota Law Related to Service Charges for Dishonored Checks Should Govern in this Case.

Regardless, Plaintiff's claims still fail as the Court should presumptively apply the law of the jurisdiction that Defendant relied upon in drafting the Notice. Here, Defendant relied upon a Minnesota statute to establish the service charge it would add on all returned checks. *See* Compl., Ex. A (citing to Minn. Stat. § 604.113, Subd. 2); *see also* Answer, Lavintman Aff. ¶ 8. Accordingly, the Court should apply Minnesota law to determine whether the Letter contains false, deceptive or misleading information.

If the Court determines that a choice of law analysis is appropriate, it should still decide that Minnesota law governs. Jurisdiction in this case is predicated on a federal question under the FDCPA, rather than on diversity of citizenship. According to the Second Circuit, "the law is unsettled when it comes to applying either a federal common law choice of law rule or state choice of law principles in non-diversity cases." *Pescatore v. Pan Am. World Airways, Inc.*, 97

7

F.3d 1, 12 (2d Cir. 1996). However, absent a significant conflict between some federal policy or interest and the use of state law, the choice of law rules of the forum state will generally apply. *See Bianco v. Erkins*, 243 F.3d 599, 606 (2d Cir. 2001). Here, the forum state is New York. New York courts apply the law of the jurisdiction with the most significant contacts to the case. *See Id.* at 607-08; *see also J&B Schoenfeld Fur Merchants, Inc. v. Kilbourne & Donohue, Inc.*, 704 F. Supp. 466, 468 (S.D.N.Y. 1989). The Uniform Commercial Code, as adopted by New York, incorporates New York's most significant contacts test. *See J&B Schoenfeld*, 704 F. Supp. at 468; *Lakhany v. Anzelone*, 788 F. Supp. 160, 162 (S.D.N.Y. 1992). As discussed below, Minnesota, not New York, is the jurisdiction with the most significant contacts to this case.

Both Minnesota and New York have adopted statutes authorizing the imposition of a service charge for dishonored checks. *See* Minn. Stat. § 604.113; N.Y. Gen. Obligations Law § 5-328. Minnesota's statute authorizes a $30 service charge; New York caps the charge at $20. *See id.* Plaintiff's claims turn on whether Defendant's Letter threatened to impose an excessive service charge on dishonored checks. A check cannot be dishonored, however, until it has been presented for payment by its holder. *See* Minn. Stat. § 336.3-502; N.Y. U.C.C. § 3-507. As such, Defendant learns whether a service charge is warranted when a check it receives from a consumer is presented, dishonored and returned to Defendant. All of these contacts take place in Minnesota.

Indeed, Defendant's place of business is located in Minnesota. Defendant provides consumers with a Minnesota address for mailing payments to it. Defendant presents all checks it receives from consumers for payment at banks located exclusively in Minnesota. The only contact this case has to New York is that Plaintiff alleges to be a resident of that state.[2] This is

---

[2] As mentioned above, Plaintiff did not even attempt to make a payment to Defendant by check. Therefore, while a "legitimate" plaintiff (i.e., one who actually made a payment by check and incurred an allegedly excessive service

8

insufficient. Accordingly, the Court should conclude that Minnesota has the most significant contacts to this case. In turn, the Court should apply Minnesota law to determine whether Defendant's Letter violated the FDCPA.

This conclusion is supported by the holding in *Slavenburg Corp. v. Kenli Corp.*, 36 UCC Rep. Serv. 8, 1983 WL 160567 (E.D. Pa. 1983). In *Slavenburg*, the debtor, a Pennsylvania corporation, reached a settlement with its unsecured creditors to pay 20% of the amount owed to each creditor. The debtor sent a settlement check to a creditor located in New York. The creditor deposited the check, but sent a letter to the debtor reserving its right to claim the balance of the debt. The creditor thereafter brought suit on the debt. At issue was whether the creditor had forfeited its rights to the balance of the debt by depositing the settlement check. The case turned on whether Pennsylvania or New York law governed. The court applied New York law, reasoning that the accord and satisfaction transaction was made in New York, where the creditor received and deposited the check, rather than in Pennsylvania, where the check was payable and from where the debtor had sent the check. The most significant contact was indicated as the place where the creditor had acted, in New York. *Id.*

    **C.**     **Minnesota Law Authorizes the Imposition of a $30 Service Charge for Dishonored Checks. Thus, the Letter is not False, Deceptive, or Misleading.**

Plaintiff asserts claims against Defendant under sections 1692e, 1692e(5), and 1692e(10) of the FDCPA. Section 1692e prohibits, generally, the use of false, deceptive, or misleading representations or means in connection with the collection of any debt. 15 U.S.C. § 1692e. Section 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. 15 U.S.C.

---

charge thereon) might assert that his place of residence is also the place of making and delivery of a check, Plaintiff cannot allege such contacts in this case.

9

§ 1692e(10). Section 1692e(5) prohibits debt collectors from threatening to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(10).

Plaintiff alleges that Defendant's Letter violated the foregoing FDCPA provisions by falsely and deceptively threatening to impose a $30 service charge on returned checks when the maximum permitted by New York law is $20. As discussed above, however, Minnesota law should govern this case. Under Minnesota law, the holder of a dishonored check may impose a service charge of up to $30 on the check, so long as the holder of the check gives its issuer notice of the charge and that civil penalties may be imposed for nonpayment. Minn. Stat. § 604.113.

As set forth above, the Notice in the Letter states that Defendant may impose a service charge of $30 on all checks returned to its office. This does not exceed the amount permitted by Minnesota law. *See* Minn. Stat. § 604.113. The Notice also states that civil penalties may be imposed for nonpayment, as required by Minnesota law. *Id.* As a result, there is nothing false, deceptive or misleading about the Letter. Plaintiff's 1692e and 1692e(10) claims must therefore fail.

In addition, Defendant has attested that it would in fact add a $30 service charge on all returned checks and, if warranted, seek to impose additional civil penalties as permitted by Minn. Stat. § 604.113. *See* Lavintman Aff. ¶ 8. Thus, the Letter does not threaten action that cannot legally be taken or that is not intended to be taken. Accordingly, Plaintiff's 1692e(5) claim must also fail.

### III. PLAINTIFF'S CLAIMS ARE THE RESULT "OF AN INGENUOUS MISREADING" OF THE LETTER.

Plaintiff's claims are nothing more than an attempt by Plaintiff and his counsel to extend the reach of the FDCPA to irrational levels. As one Circuit Court has stated, "[t]he Act [FDCPA] is not violated by a dunning letter that is susceptible of an ingenuous misreading, for

10

1584093

then every dunning letter would violate it. The Act protects the unsophisticated debtor, but not the irrational one." *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000). Such "fantastic conjecture" by a plaintiff's attorney is insufficient to state a claim (*Taylor v. Cavalry Investment, LLC*, 365 F.3d 572, 574-75 (7th Cir. 2004), as even "an unsophisticated consumer [is] able to make basic logical deductions and inferences" and to not interpret collection letters "in a bizarre or idiosyncratic fashion," as alleged by Plaintiff and his counsel in the present matter. *Olson v. Risk Mgmt. Alternatives, Inc.* 366 F.3d 509, 513 (7th Cir. 2004).

The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors and to protect consumers from debt collection abuses. *See generally* 15 U.S.C. § 1692. However, the FDCPA was not enacted to provide a windfall to those who do not experience any abusive behavior. *Dewey v. Associated Collectors, Inc.*, 927 F. Supp. 1172, 1174 (W.D. Wis. 1996). Moreover, bizarre and idiosyncratic interpretations of the FDCPA or interpretations that provide a senseless result must be disregarded by the Court. *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 414 (7th Cir. 2005); *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. 2005).

As courts have noted, the FDCPA is subject to abuses by consumers and their attorneys, which is illustrated in the following quote:

> Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the individual who has been threatened or misled. The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation, 1977 U.S.C.C.A.N. 1695, 1696, nor to ferret out collection abuse in the form of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." *Id.* Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs.

1584093

> The statute need not be applied in this manner; and indeed, this Circuit has recognized that courts should not countenance lawsuits based on frivolous misinterpretations or nonsensical assertions of being led astray. In *Russell v. Equifax A.R.S.*, one of the most often quoted opinions on the "least sophisticated consumer" standard, the Circuit emphasized that "the test is how the least sophisticated consumer-one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer- understands the notice he or she receives." *Russell*, 74 F.3d at 34. This understanding of the least sophisticated consumer standard points away from closely parsing a debt collection letter like a municipal bond offering and towards a common sense appraisal of the letter.
>
> It is interesting to contemplate the genesis of these suits. The hypothetical Mr. Least Sophisticated Consumer ("LSC") makes a $400 purchase. His debt remains unpaid and undisputed. He eventually receives a collection letter requesting payment of the debt which he rightfully owes. Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims "This clearly runs afoul of the FDCPA!" and—rather than simply pay what he owes—repairs to his lawyer's office to vindicate a perceived "wrong." "[T]here comes a point where this Court should not be ignorant as judges of what we know as men." *Watts v. State of Ind.*, 338 U.S. 49, 52, 69 S.Ct. 1347, 1349, 93 L.Ed. 1801 (1949).

*Jacobson v. Healthcare Fin. Servs., Inc.*, 434 F. Supp. 2d 133, 138-39 (E.D.N.Y. 2006); *see also Fed. Home Loan Mortgage Corp. v. Lerner, Sampson, Rothfuss, L.P.A.*, 503 F.3d 504 (6th Cir. 2007) (*quoting Jacobson*).

This is not the first time that Plaintiff's counsel has filed a questionable claim in federal court. Plaintiff's counsel has been repeatedly criticized by courts as pursuing frivolous claims. *See Mebane v. GC Servs. Ltd. P'ship*, , 481 F. Supp. 2d 249, 252 (S.D.N.Y. 2007) ("Notably, the present matter is not the first in which plaintiff's counsel, Adam Fishbein, has been criticized for pursuing frivolous claims under the FDCPA."); *Spira v. Ashwood Financial, Inc.*, 371 F. Supp. 2d 232 (E.D.N.Y. 2005) ("Plaintiff's suit, therefore, does nothing to protect a consumer against an overreaching creditor and burdens the federal court unnecessarily."); *Turner v. Asset Acceptance, LLC*, 302 F. Supp. 2d 56 (S.D.N.Y. 2004) (discussed *infra*); *Hirsch v. United Collection Corp.*, No. 03-cv-4884-RJD-SMG, 2004 U.S. Dist. LEXIS 29819 (E.D.N.Y. Oct. 27,

12

2004) (*discussing Turner*); *Kapeluschnik v. LeSchack & Grodensky, P.C.*, No. 96-cv-2399-ERK-CLP, 1999 WL 33973360, (E.D.N.Y. Aug. 26, 1999) (characterizing FDCPA argument as "frivolous"); *cf. Laster v. Cole*, No. 99-CV-2837-JG, 2000 WL 863463, at *1 (E.D.N.Y. June 23, 2000) (noting that Mr. Fishbein "inflated his billable hours and filed a perjurious affirmation" with the court); *Wilner v. OSI Collection Svcs., Inc.*, 201 F.R.D. 321, 324 (S.D.N.Y. June 26, 2001) (noting that in regard to fee submissions to the court, "[i]t does not appear that Mr. Fishbein has learned his lesson [from *Laster*]. Should plaintiff prevail, counsel would be well-advised to review his time sheets before resubmitting them to the court.").

In *Turner v. Asset Acceptance, LLC*, *supra*, 302 F. Supp. 2d at 58, the plaintiff contended that a collection notice stating: "It is a pleasure to welcome you as a new customer" violated the FDCPA because the letter "is not intended to actually welcome [the plaintiff] to anything ... and ... because [the plaintiff] is not a 'customer' of [the defendant], but rather a 'debtor' or 'consumer.'" The plaintiff submitted that the least sophisticated consumer "could be led to think that the letter is a 'friendly' communication and that the debt is instead a payment for something 'service-related,' thus 'welcoming confusion and dismay' upon the reader." *Id.* The court rejected the plaintiff's claims and stated that:

> It is this court that has experienced "confusion and dismay" at being required to rule on this frivolous question .... While Congress enacted the FDCPA in order to address many odious practices used by the debt collection industry, friendliness was not one of those odious practices. It is both possible and desirable for a new creditor to establish cordial relations with its debtors, and I find that as a matter of law there is nothing remotely deceptive about Defendant's use of the phrase "It is a pleasure to welcome you ...."

*Id.* The *Turner* court also stated that:

> Plaintiff's attorney's willingness to advance such a far-fetched legal theory is due, in all likelihood, to the provisions in the consumer protection statute at issue affording statutory damages without proof of harm and the availability of class action treatment. Congress enacted the FDCPA in order to combat egregious abuses of debtors, abuses that are real and troubling. It is almost as troubling,

13

however, for an attorney to take unreasonable advantage of Congress's good intentions and the sound legislation it has enacted.

*Id.* at 59.

This is also not the first time that Plaintiff has filed a lawsuit alleging violations of the FDCPA. Indeed, a civil party search of New York courts on PACER reveals that Plaintiff has filed dozens of FDCPA lawsuits, some dating as far back as 1998. *See* PACER Case Locator search results (July 5, 2011) (attached as Exhibit A). Notably, Mr. Fishbein has served as counsel for Plaintiff in many of those FDCPA lawsuits. Plaintiff is precisely the type of "Mr. Least Sophisticated Consumer" admonished by the court in *Jacobson*, *supra*.

Plaintiff's and his counsel's misreading of the notice in an attempt to create viable claims under the FDCPA is inappropriate. Accordingly, Plaintiff's claims in the instant matter should be dismissed.

## CONCLUSION

Based on the foregoing arguments, this Court should dismiss Plaintiff's claims against Defendant pursuant to Federal Rule 12(c) or, in the alternative, grant summary judgment in favor of Defendant pursuant to Federal Rule 56.


Dated: Valhalla, New York
       July 13, 2011

                                      /s/  Sergio Alves
                                 Sergio Alves
                                 KAUFMAN BORGEEST & RYAN LLP
                                 Attorneys for Defendant
                                 GOGGINS & LAVINTMAN, P.A.
                                 200 Summit Lake Drive
                                 Valhalla, New York 10595
                                 Phone: (914) 449-1000
                                 Fax: (914) 449-1100
                                 E-mail: salves@kbrlaw.com