UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

NICOLA LIANTONIO, JR. on behalf of himself and
all others similarly situated

                      Plaintiff,

           -against-                        11 CV 1292 (SJF) (AKT)

JOEL W. LAVINTMAN D/B/A
GOGGINS & LAVINTMAN, P.A.

                      Defendants.

-------------------------------------------------------------------

**PLEASE TAKE NOTICE,** that upon the appended motion with exhibit attached

pursuant to Fed. R. Civ. P. 15(a), plaintiff will move before the Honorable Sandra J.

Feuerstein, United States District Court, Eastern District of New York at Federal Plaza,

Central Islip, New York on a date determined by the Court for an Order granting

plaintiff's motion to file an amended complaint, and such other relief as this Honorable

Court deems just and proper.

Dated: Cedarhurst, New York
       August 24, 2011

                                  /s/

                                _____

                                Adam J. Fishbein, P.C. (AF-9508)
                                Attorney At Law
                                **Attorney for the Plaintiff**
                                483 Chestnut Street
                                Cedarhurst, New York 11516
                                Telephone (516) 791-4400
                                Facsimile (516) 791-4411

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

NICOLA LIANTONIO, JR. on behalf of himself and
all others similarly situated

                 Plaintiff,

     -against-

JOEL W. LAVINTMAN D/B/A
GOGGINS & LAVINTMAN, P.A.

          Defendants.

---------------------------------------------------------------

## MEMORANDUM OF LAW IN RESPONSE
## TO DEFENDANT'S MOTION TO DISMISS
## AND PLAINTIFF'S CROSS-MOTION
## FILE AN AMENDED COMPLAINT

Dated: Cedarhurst, New York
August 24, 2011

Adam J. Fishbein, P.C. (AF-9508)
Attorney At Law
**Attorney for the Plaintiff**
483 Chestnut Street
Cedarhurst, New York 11516
Telephone (516) 791-4400
Facsimile (516) 791-4411

1

## TABLE OF CONTENTS

INITIAL STATEMENT                                                          3

STANDARDS UNDER THE FAIR DEBT COLLECTION PRACTICES ACT    4

STANDARD FOR MOVING TO FILE AND AMENDED COMPLAINT         5


THE JURISDICTION OF THE CONSUMER OR THE JURISDICTION AGREED
UPON BETWEEN THE PARTIES IN THE UNDERLYING AGREEMENT GOVERNS
MORE THAN MINNESOTA LAW                                                6

EVEN IF MINNESOTA LAW APPLIES, THE NOTICE WAS NOT CONSPICUOUS
AND THEREFORE UNLAWFUL                                                 8

PLAINTIFF IS NOT SEEKING AN ADVISORY OPINION, IS AN UPSTANDING
INDIVIDUAL AND SO IS HIS ATTORNEY                                      9

PLAINTIFF SUBMITS THAT DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT IS PREMATURE AT THIS TIME ESPECIALLY WHERE PLAINTIFF
HAS ALLEGED IN THE PROPOSED AMENDED COMPLAINT THAT THE
REPRESENTATIONS MADE IN THE NOTICE ABOUT DISHONORED CHECKS IS
DECEPTIVE SPECIFICALLY FOR THE DEFENDANT                              12

PLAINTIFF HAS FURTHER ALLEGED THAT BY THE USE OF FACSIMILE
SIGNATURE THE DEFENDANT HAS NOT REVIEWED THE MATTER PRIOR TO
THE SENDING OF THE COLLECTION LETTER AT ISSUE                         13

CONCLUSION                                                            14

## INITIAL STATEMENT

Based upon the Court's comments at the status conference, plaintiff will respond to the defendant's motion to dismiss by addressing those issues which plaintiff perceived that the Court wants to consider further and address the other issues in the defendant's memorandum as well.

## STANDARDS UNDER THE FAIR DEBT COLLECTION PRACTICES ACT

It has been well established that the use of any false, deceptive or misleading representation in a collection letter violates the Fair Debt Collection Practices Act (FDCPA), regardless of whether the representation in question violates particular subsection of FDCPA prohibiting false or misleading representations. See Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir.1993). Debt collection practice can be false, deceptive, or misleading in violation of Fair Debt Collection Practices Act (FDCPA) even if practice does not fall within any of the statutory categories listed as being false or misleading representations. See id.

The Court in Clomon further establishes that the most widely accepted test for determining whether collection letter is false or misleading representation, thereby violating Fair Debt Collection Practices Act (FDCPA), is objective standard based on "least sophisticated consumer" standard. See id. This standard serves a dual purpose in that it endures protection of all consumers, even naive and trusting, against deceptive debt collection practices and protects debt collectors against liability for bizarre or

3

idiosyncratic interpretations of collection notices. See id. Fundamentally, it is well settled that the basic purpose of [this standard] is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. See id. See also Teng v. Metropolitan Retail Rcoverv Inc., 851 F. Supp. 61 (E.D.N.Y. 1994).

Furthermore, it is well settled that the "deceptiveness" as defined by the FDCPA is broadly interpreted to include a variety of ambiguities as well as notices that can be reasonably read to have two or more different meanings, one of which is inaccurate. See Barrientos v. Law Offices of Mark L. Nichter, 76 F. Supp.2d 510 (S.D.N.Y 1999).

Section 1692e(10) of the Act prohibits "the use of any false representation or deceptive means to collect any debt or obtain any information concerning a consumer." See 15 U.S.C. § 1692e(10); See also Ungar v. National Revenue Group Ltd., 2000 U.S. Dist. Lexis 18708 (E.D.N.Y. 2000).

In order to put oneself in the mindset of the least sophisticated consumer, it is helpful to keep in mind the following. McMillan v. Collection Professionals Incorporated, 455 F.3d 754 (7th Cir. 2006) quotes the following: "One of the most frequent fallacies concerning debt collection legislation is that contention that the primary beneficiaries are 'deadbeats.' In fact, however, there is universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debt is miniscule. . . [T]he vast majority of consumer who obtain credit fully intend to repay their debts. When default occurs, it is nearly always

4

due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce." See S.Rep. No. 95-382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697.

## STANDARD FOR MOVING TO FILE AND AMENDED COMPLAINT

"Under Rule 15(a), leave to amend a pleading shall be freely granted when justice so requires, one purpose being to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." Tomlinson v. St. Paul's Management Corp., 1998 U.S. Dist. LEXIS 1728 *4-5 (S.D.N.Y. Feb. 17, 1998). The law in the Second Circuit, as espoused by the Supreme Court, is that leave to amend should be granted "in the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 181, 182 (1962); Richardson Greenshields Secs., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987).

Plaintiff seeks leave to amend in good faith. The parties have not engaged in any discovery.

Furthermore, the defendant will not be prejudiced by the amendment. In determining what constitutes "prejudice," the Court should consider whether the new claims would: (i) require defendant to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction. Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993).

5

           The amendment is based upon the same basic conduct: defendant's debt collection practices.

           The amendment has addressed the relevant issues raised in defendant's motion to dismiss. In addition, it has included other issues which should give the defendant pause to consider to withdraw its motion so it could either simply file an answer to the proposed amended complaint or move as against the amended complaint. With the inclusion of the additional allegations in the proposed amended complaint, the plaintiff has overcome the newer pleading requirements to withstand a motion to dismiss.

## THE JURISDICTION OF THE CONSUMER OR THE JURISDICTION AGREED UPON BETWEEN THE PARTIES IN THE UNDERLYING AGREEMENT GOVERNS MORE THAN MINNESOTA LAW

Below plaintiff will address defendant's argument concerning what seems axiomatic that threatening to charge an unlawful amount for a bounced check is a violation of the FDCPA as plaintiff perceived, but of course could be mistaken, that the Court's focus was what does the underlying agreement set forth between the parties. Upon information and belief, the underlying agreement does not set forth that Minnesota law applies. The reason why the defendant asserts that Minnesota law applies is because the defendant collection law firm resides in Minnesota. However, the plaintiff would not choose to do business with the defendant.

In Abels v. JBC Legal Group, Inc., 434 F. Supp. 2d 763, CA 2006, the defendant imposed itself upon the plaintiff in order to attempt to collect a purported debt. The Court denying the motion to dismiss FDCPA suit alleging check collector was seeking excessive fees on dishonored check; complaint did not allege that assignment of check to

6

debt collector included same rights enjoyed by the original creditor raising issue of fact;
even if debt collector had received assignment of all rights of original creditor, fact issues
whether assignee could recover under UCC.

As a matter of law in New York, one cannot charge a New York resident more
then a $20.00 dollar service charge for a dishonored check. See complaint and amended
complaint. Since New York state law governs its residents, a Minnesota corporation
charging any person in New York more than New York law allows, while the Minnesota
statute might bestow on them such a right (but not a obligation) to collect $30.00,
collecting or attempting to collect such an amount in New York would be violating the
New York law. Where the Court has suggested that perhaps the underlying agreement is
relevant, this Court should find there to be genuine issue of material fact as to what law
governs for FDCPA purposes. The Court would look to the contract between the parties
which in itself raises an issue of fact and that can not be decided on a motion for
judgment on the pleadings especially concerning plaintiff's proposed amended complaint.

Assuming that the Court would ultimately analyze whether New York or
Minnesota law applies, even based upon the caselaw authority to which the defendant has
cited in its initial memorandum at 7-8, New York law should apply. The consideration
are that the plaintiff unfortunately incurred a debt, but not with the defendant.
Apparently, based upon the collection letter at issue, the debt was sold to a third party
portfolio buying company.  Next in the chain is the defendant, a Minnesota attorney and
law firm.  The plaintiff has not chosen to have contact with the Minnesota firm.  The
egregious conduct of the defendant did not originate in the State of Minnesota, but in the

State of New York. Defendant directed its contact into the State of New York by the sending of an unlawful collection letter (see all allegations in the proposed amended complaint). Upon information and belief, plaintiff had not been making payments previously into the State of Minnesota. Plaintiff is a resident of the State of New York. According to 1692i concerning where proper jurisdiction to bring suit against a consumer, it is where the consumer resides. Where the creditor resides is not taken into consideration. Therefore, based upon all of these facts, New York state law applies to especially to a consumer under the FDCPA.

## EVEN IF MINNESOTA LAW APPLIES, THE NOTICE WAS NOT CONSPICUOUS AND THEREFORE UNLAWFUL

Plaintiff has more fully alleged in the proposed amended complaint that Minnesota law dictates that the notice concerning charging $30.00 for a bounced check must be set forth conspicuously. Attached to the initial complaint is the August 13, 2010 collection letter at issue. The Notice is set forth at the bottom right corner of the letter in very small type print. It is actually set forth in the payment stub portion of the letter. Just above the notice is the return address of the plaintiff and the address of the defendant. Both of those addresses are set forth in considerably larger type than the Notice and are set forth in capital letters which just adds to their prominence and detracts from the notice. Therefore, defendant has forfeited its right to collect the larger amount of $30.00, but must only charge the lower amount of $20.00 for New York consumers.

See Patzka v. Viterbo College, 917 F. Supp. 654 - Dist. Court, WD Wisconsin 1996 wherein the collection agency violated 15 USC. § 1692f by charging a collection fee and interest not allowed by the contract or state law because it was not disclosed and

8

was prohibited by state law. Hereto, defendant is not allowed to charge $30.00 because
it did not comply with Minnesota state law. Furthermore see where the imposition of
$15.00 service charge on each bad check it collected violated 15 USC § 1692f (1) since
there was no evidence of contract providing for the charge and the charge was not
expressly permitted by state or federal law. It made no difference that state law did not
prohibit such charges or permitted them in other contexts. Attempt to collect such charges
violated the FDCPA (West v. Costen, 558 F. Supp. 564 - Dist. Court, WD Virginia 1983)

## PLAINTIFF IS NOT SEEKING AN ADVISORY OPINION, IS AN UPSTANDING INDIVIDUAL AND SO IS HIS ATTORNEY

Defendant has a misguided understanding of the FDCPA evidenced by its
argument on page seven of defendant initial memorandum wherein defendant argues that
plaintiff is attempting to make a case out of a hypothetical scenario. The federal courts
around the country and within the Second Circuit have decided many cases concerning
false threats under 1692e(5). The classic example is where a collection agency falsely
threatens suit that if the plaintiff does not pay the debt, then the defendant will sue the
consumer. Perhaps the most similar example in that context would be where the
defendant threatens to sue the plaintiff, where the statute of limitations period governed
by state law has expired. The defendant states, if you do not pay the debt, we will sue
you. Under defendant's logic, all of the cases decided in the consumer's favor have been
decided incorrectly. Defendant argues that there is no case in controversy until the
consumer is sued passed the statute of limitations period. Here, the defendant has made a
similar threat. It has threatened that if the plaintiff pays the debt and the check bounces,

9

the defendant will impose a $30.00 fee. The defendant is not legally able to do so.
Therefore, it is considered a false threat under 1692e(5).

Lastly, the matter of Larsen v. JBC Legal Group, P.C., 533 F. Supp. 2d 290
(E.D.N.Y. 2008) by stating that they would attempt to collect from plaintiff an amount of
damages for a dishonored check that is not permitted by state law the collection agency
and debt buyer violated § 1692f(1).

Plaintiff recalls in the conference before the Court, the Court cautioned the parties
to cite to any caselaw that is relevant to the issues. It appears to the undersigned that
based upon the Court's comments, the defendant should have filed an amended
memorandum of law and included the within case especially where it was decided by
Magistrate Judge Boyle who sits in the very same courthouse. This case shows that the
plaintiff is clearly not seeking an advisory opinion. It appears that Mr. Alves has not
followed the directive of this Court.

Just to note, Mr. Alves has engaged in efforts to disparage the undersigned and
the plaintiff. Mr. Alves used similar or the same language in the Rozier v. Financial
Recovery Services, Inc. matter, 10 CV 3273 (DLI) (JO) in which he lost on the
defendant's motion to dismiss. Attached hereto are the two memoranda submitted by Mr.
Alves. In the initial memorandum, as in the within matter, Mr. Alves quoted from the
Jacobson decision but failed to mention that the matter was partially overturned on
appeal. He had to defend himself in the reply memorandum.

10

    While there have been some judges who have disagreed with some of the cases,

where I have filed perhaps 1800-2000 FDCPA matters, it seems possible that some

judges would disagree. However, it is my understanding through others and my own

research that many of the decisions in which I was plaintiff's counsel (and in which I

prevailed) have been cited by federal district courts and circuit courts of appeals

countrywide. I have observed that through my commencing suit against various

collection agencies, they have modified their practices to better comply with the law.

This Court has even decided matters in my favor over the years. Therefore, we believe

that for Mr. Alves, a much more junior member of the bar, this Court should caution him

not to engage in unsavory tactics and stick to the merits of the matter.

    Mr. Alves has also raised issues concerning the amount of lawsuits the plaintiff

has brought. The undersigned has addressed this issue in the proposed amended

complaint. The plaintiff has had unfortunate financial circumstances which has led to

many collection agencies contacting him over the years.

    Furthermore, by coincidence plaintiff cites to a decision of Shami v. National

Enterprise Systems, Inc. slip op., 09 CV 722 (RRM) (VVP) (E.D.N.Y. September 23,

2010) by Judge Mauskopf in which she rejected some opinions from other Court and

denied defendant's motion to dismiss. Plaintiff submits that this is a decision in which

another judge perhaps more critical of the FDCPA could have decided quite differently.

    Second, this decision supports plaintiff's position that he is not seeking an

advisory opinion. In Shami, the letter stated in pertinent part: "You can now pay by

automated phone system . . . or on the internet. Transaction fees will be charged if you

11

use the automated phone system or the internet to make payment on this account. You

are not required to use the automated phone system or the internet to make payment on

this account."

     This language is similar where the plaintiff did not allege that he actually paid

fees but where there was the possibility of transaction fees. In the within matter, there are

no allegations that the plaintiff was improperly charged fees but that there was the threat

of charging fees.

**PLAINTIFF SUBMITS THAT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT IS PREMATURE AT THIS TIME ESPECIALLY
WHERE PLAINTIFF HAS ALLEGED IN THE PROPOSED AMENDED
COMPLAINT THAT THE REPRESENTATIONS MADE IN THE NOTICE
ABOUT DISHONORED CHECKS IS DECEPTIVE SPECIFICALLY FOR THE
DEFENDANT**

     Defendant has moved for judgment on the pleadings and in the alternative has

moved for summary judgment. Plaintiff appends hereto an affirmation pursuant to FRCP

56f stating that plaintiff requires certain additional information to respond to a motion for

summary judgment. Specifically plaintiff has not been given the opportunity to conduct

discovery to determine exactly under which circumstances, if any, that the defendant

imposes the $30.00 check for or other civil penalties. Plaintiff is a New York resident

and perhaps certain charges are imposed on Minnesota residents which are not imposed

upon New York residents commonly in defendant's collection practice. Paragraph 29 of

the proposed amended complaint alleges upon information and belief assertions which

support plaintiff's right to conduct discovery on certain issues namely the circumstances

under which the charges are made.

     In other words, plaintiff is claiming that defendant cannot collect these charges

against New York residents, and even if could, defendant does not and has engaged in false threats and deceptive representations on that basis as well.

The Second Circuit has made it clear that obligatory disclosures made under state law must comply with the FDCPA. See Romea v. Heiberger, 163 F.3d 111 (1998). As the Court stated: "It is the provisions of the FDCPA that by and of themselves determine what debt collection activities are improper under federal law. If the statute applies to Heiberger's letter and the letter does not comply with the FDCPA's requirements, then by definition it constitutes an improper debt collection activity under federal law."

Furthermore, in my case before Judge Block, he decided that a conflict between the FCRA and FDCPA resulted in the denying of defendant's motion to dismiss. See Stewart v. Allied, slip op. 10 CV 2141 (FB) (RLM) E.D.N.Y June 3, 2011.

Here, if the defendant has engaged in false threats and does not impose the $30.00 to New York residents or additional penalties, and even if defendant is found to be obligated to include the disclosure, he could still be found liable under the FDCPA. This theory will require some discovery so that it is not appropriate for the Court to decide defendant's motion for summary judgment.

## PLAINTIFF HAS FURTHER ALLEGED THAT BY THE USE OF FACSIMILE SIGNATURE THE DEFENDANT HAS NOT REVIEWED THE MATTER PRIOR TO THE SENDING OF THE COLLECTION LETTER AT ISSUE

Plaintiff has alleged in the proposed amended complaint (paragraphs 30-36) that the defendant or any attorney in his employ reviewed the plaintiff's account before the letter at issue was sent. In Clomon v. Jackson, 988 F.2d 1314 (2d Cir. 1993). The Second Circuit decided that "Mass-produced collection letter bearing name of debt collector's general counsel in the letterhead and facsimile of his signature at its conclusion contained

13

false or misleading communications in violation of §§ 1692c, 1692e(3) and 1692c(10) where the attorney did not review debtor's file or the particular collection letter before the letter was sent."

The letter at issue contains a facsimile signature so that the letter fits exactly within the Clomon decision.

## **CONCLUSION**

WHEREFORE, plaintiff respectfully requests that the Court deny defendant's

motion to dismiss and grant plaintiff's cross-motion to file an amended complaint.

Dated: Cedarhurst, New York
August 24, 2011

Respectfully submitted,

/s/

Adam J. Fishbein, P.C. (AF-9508)
Attorney At Law
**Attorney for the Plaintiff**
483 Chestnut Street
Cedarhurst, New York 11516
Telephone (516) 791-4400
Facsimile (516) 791-4411

14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------

NICOLA LIANTONIO, JR. on behalf of himself and
all others similarly situated

                         Plaintiff,

                                                    11 CV 1292 (SJF) (AKT)

          -against-

JOEL W. LAVINTMAN D/B/A
GOGGINS & LAVINTMAN, P.A.

                         Defendants.

------------------------------------------------------------

## PLAINTIFF'S AFFIRMATION PURSUANT
## TO RULE 56(f) OF THE FEDERAL RULES OF CIVIL PROCEDURE

ADAM J. FISHBEIN, an attorney duly admitted to practice law in the Courts of the State

of New York and before this Honorable Court, affirms under penalties of perjury the

following:

    1.    I maintain an office for the practice of law at 483 Chestnut Street,

Cedarhurst, New York 11516.

    2.    I make this affirmation in support of plaintiff's application to stay

defendant's motion for summary judgment.

    3.    Plaintiff would require paper discovery and a deposition of a

representative of the defendant and/or Mr. Lavintman himself in order to exactly under

which circumstances does the defendant impose a $30.00 dishonored check fee and

impose additional penalties.  It is prejudicial to the plaintiff if the Court were to rely

upon the self serving affidavit appended to defendant's answer.

    WHEREFORE, plaintiff respectfully requests that the Court stay the briefing of

defendant's motion for summary judgment pursuant to Rule 56(f) of the Federal Rules of

Civil Procedure.

1

Dated: Cedarhurst, New York
      August 24, 2011

Adam J. Fishbein, P.C.  (AF-9508)
Attorney At Law
**Attorney for the Plaintiff**
483 Chestnut Street
Cedarhurst, New York 11516
Telephone (516) 791 4400
Facsimile  (516) 791-4411

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------
NICOLA LIANTONIO, JR. on behalf of himself and
all others similarly situated
                 Plaintiff,

        -against-                   11 CV 1292 (SJF) (AKT)

JOEL W. LAVINTMAN D/B/A
GOGGINS & LAVINTMAN, P.A.

                Defendants.

------------------------------------------------------------

## PROPOSED AMENDED CLASS ACTION COMPLAINT

### *Introduction*

1.     Plaintiff seeks redress for the illegal practices of Joel W. Lavintman d/b/a

        Goggins & Lavintman, P.A. concerning the collection of debts, in violation of the

        Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA").

### *Parties*

2.     Plaintiff is a citizen of the State of New York who resides within this District.

3.     Plaintiff is a "consumer" as that term is defined by Section 1692(a)(3) of the

        FDCPA, in that the alleged debt that defendant sought to collect from plaintiff a

        consumer debt, purportedly owed to Midwest Recovery Fund.

4.     Defendant's principal place of business is located in Mendota Heights, Minnesota.

5.     Defendant's is regularly engaged, for profit, in the collection of debts allegedly

        owed by consumers.

6.     Upon information and belief, Joel W. Lavintman is an attorney licensed to

        practice law in the state of Minnesota.

7.    Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. §
      1692(a)(6).

### Jurisdiction and Venue

8.    This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28
      U.S.C. § 1331.

9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and
      transactions that give rise to this action occurred, in substantial part, in this
      district.

10.   On information and belief, on a date better known by defendant, defendant began
      attempting to collect an alleged consumer debt from the plaintiff.

11.   On or about August 13, 2010 defendant sent the plaintiff a collection letter
      seeking to collect a purported balance incurred for personal purposes.

12.   Said letter states in part: "Notice: A service charge of $30 will be added on all
      returned checks to this office. Additional penalties may be imposed for
      nonpayment. Minn. Stat. sec. 604.113 Subd. 2."

13.   Pursuant to said section of the Minnesota statute, the notice has to be posted
      conspicuously.

15.   The defendant has failed to post the notice conspicuously on the August 13, 2010
      collection letter.

16.   The notice is placed in small type at the bottom right corner of the letter.

17.   Said notice is not sufficiently displayed in the letter at issue to give a consumer
      notice that a check fee in the amount of $30.00 may be imposed.

18.   The statute sets forth that the notice must contain a statement that civil penalties

2

may be imposed.

19.     State law must conform with the Fair Debt Collection Practices Act.

20.     The FDCPA states that there can be no misrepresentations made to a consumer.

21.     A collection agency cannot engage in false threats or deceptive representations.

22.     The defendant cannot set forth that civil penalties may be imposed when that does
        not happen in the regular course of the defendant's debt collection practice.

23.     Upon information and belief, defendant does not cause civil penalties to be
        imposed on consumers.

24.     Due to the fact that the notice was not displayed in a conspicuous fashion in the
        collection letter, the plaintiff would have to be charged the bounced check fee in
        his jurisdiction, namely New York State.

25.     According to New York State law, N.Y. Gen Oblig. Law 5-328 (2003), the
        maximum fee for a check returned for insufficient funds is $20.00.

26.     The defendant has deceptively and falsely threatened the plaintiff that the
        defendant could impose a fee of $30.00 when the maximum that could be
        imposed is $20.00.

27.     The actions in which the defendant has engaged also violate 1692f(1) for
        unlawfully threatening to impose a charge of $30.00 and for unlawfully
        threatening to impose civil penalties.

    28.     The plaintiff entered into an agreement with the underlying original creditor.

    29.     The jurisdiction which could govern the amount of a dishonored check fee is
            the jurisdiction agreed upon between the plaintiff and the original creditor, if
            any.

30. Upon information and belief, the plaintiff and the original creditor did not agree that Minnesota would govern a dishonored check fee.

31. Upon information and belief, plaintiff never paid the original creditor at a bank in Minnesota.

32. Plaintiff never voluntarily agreed to conduct business with the defendant.

33. The entity which purchased the debt from the original creditor hired the defendant to attempt to collect the debt.

34. The defendant injected itself into contacting a New York consumer, namely the plaintiff concerning the purported underlying debt.

35. The defendant should have known that when communicating with a New York consumer, New York law applies.

36. The defendant directed its collection effort into the State of New York.

37. Upon information and belief, defendant does not routinely impose the $30.00 fee nor other additional penalties.

38. Upon information and belief, defendant Lavintman oversees the consumer collection's operation of the firm.

39. Upon information and belief, defendant Lavintman has approved the text of the letter.

40. The letter at issue contains a facsimile signature.

4

41.　Upon information and belief, no attorney reviewed the plaintiff's account before the initial letter was sent to the plaintiff.

42.　The defendant sent the above referenced letter to the plaintiff which was mass produced and computer generated allegedly from defendant.

43.　That a mass-produced computer generated letter bearing a facsimile signature was forwarded to the plaintiff.

44.　Upon information and belief, that said letter was a mass-produced, computer generated letter, and was designed to give the impression that said letter was forwarded by an attorney when said letter was not personally reviewed by an attorney.

45.　Upon information and belief neither defendant nor any attorney admitted to practice law reviewed the plaintiff's alleged delinquent account prior to the date of the letter at issue.

46.　Upon information and belief no attorney associated with the defendant reviewed the plaintiff's account prior to the sending of the initial letter to the plaintiff.

47.　The said letter is in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e, 1692e(3), 1692e(5), 1692e(10) and 1692f(1).

48.　Over the years, plaintiff has been subjected to many collection attempts by various collection agencies and law firms.

49.　Plaintiff has a family and has attempted to meet all of his financial obligations.

50.　Plaintiff has been involved in various businesses which have had their successes and failures.

5

51. Plaintiff has done the best he can to meet his obligations without having to file for bankruptcy protection.

52. Had plaintiff filed for bankruptcy protection, plaintiff would assume that the creditors would receive proper notice and the attempts from collection agencies would lessen.

53. Plaintiff has always hoped that he could support his family in a better fashion than he has so that he could meet his financial obligations.

54. Plaintiff realizes that he has certain rights under the FDCPA.

55. There have been many times when collection agencies have contacted the plaintiff in a legal fashion.

56. However, when the collection agencies have violated the plaintiff's rights, he has properly exercised his rights.

57. Plaintiff has brought the within action in good faith.

## AS AND FOR A FIRST CAUSE OF ACTION

### *Violations of the Fair Debt Collection Practices Act brought by plaintiff on behalf of himself and the members of a class, as against the defendants.*

58. Plaintiff restates, realleges, and incorporates herein by reference, paragraphs 1-57 as if set forth fully in this Cause of Action.

59. This cause of action is brought on behalf of plaintiffs and the members of a class.

60. The Class consists of consumers who received the same form letter, as did the plaintiff.

61. The Class consists of all persons whom Defendant's records reflect resided in the State of New York and who were sent a collection letter (a) bearing the defendant's

6

letterhead in substantially the same form as the letter sent to the plaintiffs on or about

August 13, 2010 sent within one year prior to the date of the within complaint; (b) the

collection letter was sent to a consumer seeking payment of a purported consumer debt;

and (c) the collection letter was not returned by the postal service as undelivered (d) and

that the letter contained violations of 15 U.S.C. §§ 1692e, 1692e(3), 1692e(5), 1692e(10)

and 1692f(1).

62.       Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and

preferable in this case because:

(A) Based on the fact that the collection letters that are at the heart of this litigation

are mass-mailed form letters, the class is so numerous that joinder of all members

is impracticable.

(B) There are questions of law and fact common to the class and these questions

predominate over any questions affecting only individual class members. The

principal question presented by this claim is whether the Defendant violated the

FDCPA using collection letters and language therein which violate the FDCPA.

(C) The only individual issue is the identification of the consumers who received the

letters, (*i.e.* the class members), a matter capable of ministerial determination

from the records of Defendant.

(D) The claims of the plaintiff are typical of those of the class members. All are based

on the same facts and legal theories.

(E) The plaintiff will fairly and adequately represent the class members' interests. The

plaintiff has retained counsel experienced in bringing class actions and collection-

abuse claims. The plaintiff's interests are consistent with those of the members of the

7

class.

63.     The plaintiff will fairly and adequately represent the class members' interests. The
plaintiff has retained counsel experienced in bringing class actions and collection-
abuse claims. The plaintiff's interests are consistent with those of the members of the
class.

64.  A class action is superior for the fair and efficient adjudication of the class
members' claims. Congress specifically envisions class actions as a principal means
of enforcing the FDCPA. 15 U.S.C. 1692(k). The members of the class are generally
unsophisticated individuals, whose rights will not be vindicated in the absence of a
class action. Prosecution of separate actions by individual members of the classes
would create the risk of inconsistent or varying adjudications resulting in the
establishment of inconsistent or varying standards for the parties and would not be in
the interest of judicial economy.

65.  If the facts are discovered to be appropriate, the plaintiff will seek to certify a class
pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

66.  Collection letters, such as those sent by the defendant are to be evaluated by the
objective standard of the hypothetical "least sophisticated consumer."

67.  Defendant violated the FDCPA as set forth above.

68.     As a result of the above violations of the FDCPA, defendant is liable to the
plaintiff for the sum of plaintiff's statutory damages to be determined at trial, plus
costs and attorney's fees.

WHEREFORE, plaintiff respectfully prays that judgment be entered against defendant in
the amount of:

8

(a)     Statutory damages pursuant to 15 U.S.C. § 1692k in an amount to be

determined at the time of trial.

(b)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

(c)     For such other and further relief as may be just and proper.


Dated: Cedarhurst, New York
August 24, 2011


_____
Adam J. Fishbein, P.C.  (AF-9508)
Attorney At Law
**Attorney for the Plaintiff**
483 Chestnut Street
Cedarhurst, New York 11516
Telephone (516) 791-4400
Facsimile (516) 791-4411


Plaintiff requests trial by jury on all issues so triable.


_____
Adam J. Fishbein  (AF-9508)

ORIGINAL
DfF
C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

YVETTE STEWART, on behalf of herself
and all others similarly situated,

                          Plaintiff,               **MEMORANDUM AND ORDER**
                                                   Case No. 10-CV-2141 (FB) (RLM)

          -against-

ALLIED INTERSTATE, INC.,

                          Defendant.

------------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*                    *For the Defendant:*
ADAM JON FISHBEIN                       CHRISTOPHER B. HITCHCOCK
Adam J. Fishbein, Attorney at Law       JOHN WALTER HANSON
483 Chestnut Street                     Hitchcock & Cummings, LLP
Cederhurst, NY 11516                    120 West 45th Street, Suite 405
                                        New York, NY 10036

**BLOCK, Senior District Judge:**

          For the reasons stated at oral argument and summarized below, defendant's

motion to dismiss under Fed. R. Civ. P. 12(b)(6) is denied.

          Yvette Stewart ("Stewart") brings this putative class action under the Fair

Debt Collection Practices Act ("FDCPA"). The FDCPA prohibits debt collectors from

"use[ing] any false, deceptive, or misleading representation or means in connection with

the collection of any debt," 15 U.S.C. § 1692e, including "threat[ening] to take any action

that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5), or

"use[ing] [] any false representation or deceptive means to collect or attempt to collect any

debt or to obtain information concerning a consumer," *id.* § 1692e(10).

          Stewart claims that Allied Interstate, Inc. ("Allied") — a debt collector — made

a false, deceptive and misleading statement when it wrote in its collection letter to her that: "Our client VERIZON may report information about your account to the credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your Credit Report." Compl. ¶ 11. Stewart alleges that statement was false and misleading because "Verizon does not report the payment history of late payments or missed payments,"[1] *id.* ¶ 13, "Verizon merely reports a debt in collection and if it has been referred to a collection agency, *id.* ¶ 14, and, thus, "[the letter's] language threatens [sic] in which the defendant does not engage," *id.* ¶ 12.

Because this is a motion to dismiss, all Stewart's allegations are taken as true.[2] *See LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) ("On a motion to dismiss . . . we must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.") (internal quotation marks omitted).

Allied argues that because the wording of its letter was nearly identical to model language provided to financial institutions for the purpose of complying with the Fair Credit Reporting Act,[3] 15 U.S.C. § 1681 ("FCRA"), it cannot be held liable under the

---

[1]Stewart did not allege that Allied knew about Verizon's debt-reporting practices, but because the FDCPA is a strict liability statute, *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996), Stewart was not required to allege Allied's knowledge to state a claim.

[2]At this stage, *Harrison v. Palisades Collection LLC*, No 06-CV-3239 (E.D.N.Y. 2007) (transcript) and *Fainbrun v. Sw. Credit Sys., L.P.*, 246 F.R.D. 128 (E.D.N.Y. 2007) — cited in Stewart's memorandum of law — are irrelevant; both were decided on motions for summary judgment, after the parties had engaged in discovery.

[3]The regulations promulgated by the Federal Reserve to enforce the FCRA provide this model language: "We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be

2

FDCPA. Defendant cites no authority in support of that argument and the Court has found none.

The purpose of the model notices promulgated under the FCRA is to demonstrate the type of notice a financial institution must give a customer before reporting negative information to a consumer reporting agency. *See* 15 U.S.C. § 1681s-2(a)(7)(A). A Federal Reserve regulation provides that debt collectors are considered "financial institutions," and are also subject to the FCRA's notice requirements. *See* 12 C.F.R. § 225.28(b)(2)(iv). The purpose of the FDCPA, by contrast, is to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). These purposes are not in conflict: a debt collector must give notice to debtors before reporting negative information under the FCRA, and a debt collector must not use false, misleading, or deceptive means to collect a debt under the FDCPA.

It may well be that Allied has complied with the notice requirements in the FCRA, but such compliance does not necessarily shield it from liability under the FDCPA. Thus, Allied's motion to dismiss is denied.

**SO ORDERED.**

s/ Judge Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 3, 2011

---

reflected in your credit report." 12 C.F.R. § 222, App. B, Model Notice B-1.

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

SOLOMON E. SHAMI,

         Plaintiff,

- against -

NATIONAL ENTERPRISE SYSTEMS,

         Defendant.
-------------------------------------------------------X

**MEMORANDUM & ORDER**
09-CV-722 (RRM) (VVP)

MAUSKOPF, United States District Judge.

Plaintiff Solomon E. Shami ("Plaintiff") brings this putative class action against

Defendant National Enterprise Systems, Inc. ("Defendant"), alleging violations of the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* Before the

Court is Defendant's motion to dismiss the Complaint pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion is

DENIED.

### FACTUAL BACKGROUND

Plaintiff is a resident of New York who resides in Kings County and is a

"consumer" within the meaning of the FDCPA. Defendant is an Ohio-based company

regularly engaged in the collection of debts allegedly owed by consumers and is therefore

a "debt collector" within the meaning of the FDCPA. On October 6, 2008, Plaintiff

received a form collection letter from Defendant seeking to collect a debt allegedly

incurred by Plaintiff to a third-party that had subsequently been assigned to Defendant.

The letter stated, in pertinent part:

> You can now pay by automated phone system ... or on the
> internet. Transaction fees will be charged if you use the
> automated phone system or the internet to make payment

> on this account. You are not required to use the automated
> phone system or the internet to make payment on this
> account.

(*See* Def.'s Notice of Mot. (Docket No. 10), Ex. A (the "Collection Letter").)

On February 20, 2009, Plaintiff commenced this action alleging that the language

set forth above violated § 1692c of the FDCPA "by using false and deceptive means in

the collection of debt by making a false representation that it was entitled to receive

compensation for payment by automated phone system or the internet." (Compl. (Docket

No. 1) at ¶ 24.) Plaintiff further alleges that the Collection Letter violated § 1692f(1) of

the FDCPA "by collecting an amount that was not authorized by contract or permitted by

law." (*Id.* ¶ 25.)

## STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the

pleadings are closed—but early enough not to delay trial—a party may move for

judgment on the pleadings." The standard of review under a Rule 12(c) motion is the

same standard applicable to a Rule 12(b)(6) motion. *Sheppard v Beerman*, 18 F.3d 147,

150 (2d Cir. 1994). To survive a Rule 12(b)(6) motion, a complaint must contain

"sufficient factual matter ... to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009). A court must "accept

as true all allegations in the complaint and draw all reasonable inferences in favor of the

non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517

F.3d 104, 115 (2d Cir. 2008). In addition to considering the pleadings, the court may

consider "statements or documents incorporated by reference in the pleadings ... and

2

documents possessed by or known to the plaintiff and upon which it relied in bringing the
suit." *ATSI Commc'ns, Inc. v. Schaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

## DISCUSSION

One of the FDCPA's principal objectives is "to eliminate abusive debt collection
practices by debt collectors." 15 U.S.C. § 1692(e). The question of whether a debt
collector's action violates the FDCPA is determined objectively from the viewpoint of
the "least sophisticated consumer." *Savino v Computer Credit, Inc.*, 164 F.3d 81, 85 (2d
Cir. 1998). This standard is intended to protect "the gullible as well as the shrewd."
*Jacobson v Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (citing *Cloman
v. Jackson*, 988 F.2d 1314, 1318 (2d Cir 1993)). However, even in "crafting a norm that
protects the naïve and the credulous," courts must "carefully preserve the concept of
reasonableness." *Id.* Of course. the FDCPA does not provide relief for claims that are
based on "bizarre or idiosyncratic interpretations of collection notices." *Cloman*, 988
F.2d at 1320.

### Plaintiff's Claim Under 15 U.S.C. § 1692f(1)

Section 1692f(1) of the FDCPA prohibits debt collectors from "[t]he collection of
any amount (including any interest, fee, charge, or expense incidental to the principal
obligation) unless such amount is expressly authorized by the agreement creating the debt
or permitted by law." 15 U.S.C § 1692f(1). The Second Circuit has held that "[t]he
FDCPA prohibits *(inter alia)* a debt collector from collecting *any service charge* 'unless
such amount is expressly authorized by the agreement creating the debt or permitted by
law.'" *Tuttle v. Equifax Check.* 190 F.3d 9, 11 (2d Cir. 1999) (quoting 15 U.S.C. §
1692f(1)) (emphasis added). Therefore, "[u]nder the FDCPA, [a debt collector] may

3

impose a service charge if (i) the customer expressly agrees to the charge in the contract

creating the debt or (ii) the charge is permitted by law… In other words,

> *If state law expressly permits service charges*, a service charge may be imposed even if the contract is silent on the matter;
>
> *If state law expressly prohibits services charges*, a service charge cannot be imposed even if the contract allows it;
>
> *If state law neither affirmatively permits nor expressly prohibits service charges*, a service charge can be imposed only if the customer expressly agrees to it in the contract."

*Id.* at 13 (citations omitted).

In this case, Defendant does not assert that the transaction fees described in the

Collection Letter were expressly authorized by the underlying agreement creating the

debt; nor does Defendant assert that these fees are otherwise permitted by New York law.

Defendant contends instead that § 1692f(1) itself is inapplicable because the phone and

online methods of payment are optional.

In the absence of direct support from the Second Circuit Court of Appeals or

guidance from district courts in this Circuit, Defendant principally relies an unpublished

opinion from the Central District of Illinois. *See Mann v Nat'l Ass'n Mgmt. Enters., Inc.,*

No. 04-1304 (C.D. Ill. Feb. 23, 2005). In *Mann*, a debt collector sent the plaintiff two

collection letters offering to settle outstanding credit card debt. *See* slip op. at 1. The

letters stated, in relevant part:

> If you have elected to make payments via our "check by phone" system, our office charges a convenience fee of $7.50 per transaction for this service. This fee is in addition to your actual payment and the fee will not be credited to your outstanding balance.

*Id.* at 2.

4

The court observed that "the check-by-phone method of payment is presented as an option and the amount of the fee for the service is disclosed." *Id.* The court opined that "consumer harm seems nonexistent" and that a consumer "might actually want to pay for the check-by-phone option." *Id.* at 2-3. Specifically addressing Plaintiff's § 1692f(1) claim, the court relied on *Lewis v. ACB Bus. Servs., Inc.*, 911 F. Supp. 290 (S.D. Ohio 1996), and *Lee v. Main Accounts, Inc.*, 125 F.3d 855 (6th Cir. 1997) and, concluding that it was unclear that the optional payment method constituted a collection within the meaning of the FDCPA, dismissed the plaintiff's § 1692f(1) claim. *Id.* at 4. However, for the reasons set forth below, the Court finds *Mann's* reliance on the cases noted above misplaced and declines to adopt that court's ultimate conclusion.

In *Lewis*, the court reasoned that a payment option that imposed a processing fee in the event the debtor opted to make payment with an American Express moneygram did not violate § 1692f(1) because the debt collector itself would not receive any portion of the processing fee. *See Lewis*, 911 F. Supp. at 293-94. ("[Plaintiff's] claims were dismissed because the uncontradicted evidence proved that any such fee, voluntarily chosen by the debtor if he or she chose this payment option, *would not be paid to [defendant/debt collector] or any entity it controlled* and was a standard fee charged by the processor of the payment, an independent entity.") (emphasis added).

Similarly, in *Lee*, the court found that a five-percent "transaction fee" noted in a collection letter did not violate § 1692f(1) because the fee itself was imposed and collected by a third-party credit card processing company; thus, the debt collector itself did not receive any additional compensation in the event that the debtor voluntarily availed herself of the option to pay the debt with a credit card. *See Lee*, 125 F.3d at 855.

5

("[T]he five-percent transaction fee mentioned in the letter is not a fee collected by [the debt collector], but a *third-party charge* triggered when the debtor chose the option of paying by credit card ... and [the debt collector] would not have received any additional compensation from the credit card fee.") (emphasis added).

By contrast, in *Longo v. Law Office of Gerald E. Moore & Assocs., P.C.*, No. 04 C 5759 (N.D. Ill. Feb. 3, 2005), another unpublished case cited by Defendant, the court found that a collection letter offering the debtor the option of paying the debt by phone for a $7.50 fee violated § 1692f(1) because the fee was "incidental" to the underlying debt. *See* slip op. at 8. The court noted that the FDCPA does not specifically state how "incidental" a fee must be to fall outside its scope, but concluded that the liberal construction afforded the statute warranted that the fee be considered incidental to the claimed debt. *Id.* The court further noted that the collection letter at issue in that case did not list any other payment options and was geared "toward handling payment of the debt over the telephone." *Id.*

The Court concludes that Plaintiff has stated a claim under § 1692f(1). The court in *Longo* rested its decision on the FDCPA's prohibition on the collection of *any* fee in excess of the underlying debt unless authorized by prior agreement or state law. Likewise, this Court concludes that the fees outlined in the Collection Letter at issue, like the pay-by-phone fees discussed in *Longo*, are incidental to Plaintiff's purported actual debt. Next, it is unclear at this stage of this litigation whether the underlying contract between Plaintiff and the original creditor contemplated future transactional fees—that is, whether Plaintiff previously agreed to pay charges in excess of his actual debt in the

6

event that he defaulted under the agreement.[1] Finally, there is no evidence that the fees at issue were simply Defendant's attempt to pass the costs of third-party charges to Plaintiff, or, as Plaintiff alleges, a method of obtaining increased compensation through the impermissible collection of service charges in addition to the underlying debt.

### Plaintiff's Claim Under § 1692e(2)

Section 1692e of the FDCPA prohibits debt collectors from employing "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e(2) prohibits "[t]he false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. 1692e(2). Plaintiff contends that Defendant violated § 1692e(2) by falsely representing in the Collection Letter that it was entitled to receive compensation for telephone and online payments. (*See* Compl. ¶ 24.)

Because the Court has concluded that Plaintiff has stated a claim under § 1692f(1) of the FDCPA, Plaintiff has also stated a claim under § 1692e(2). Specifically, if it is determined that the Collection Letter violates § 1692f(1) by representing that the transaction fees are permissible, Defendant also would be in violation of § 1692e(2). *See Longo*, slip op. at 10.

Moreover, several aspects of the Collection Letter suggest that it might be misleading to an unsophisticated consumer in other ways. First, unlike the fees at issue

---

[1] The actual Collection Letter that Plaintiff received has not been produced. Rather, Defendant has submitted a template version of the letter it presumably sent to Plaintiff. The template version does not include any information concerning the identity of the original creditor, the agreement between Plaintiff and the original creditor, the date the purported debt became due, or the total amount Defendant claims that Plaintiff owes.

7

in all of the cases discussed above, the Collection Letter in this case did not state how much Plaintiff might be charged in the event he used the phone or internet to pay his debt. Second, much like the letter at issue in *Longo*, the Collection Letter here appears designed to *encourage* its recipient to make payments telephonically or electronically, and thereby incur the transaction fee. Specifically, the paragraph outlining the debtor's payment options begins with a sentence announcing that the debtor "can now pay" via Defendant's "800" number and/or website address, but does not list a mailing address where payments may be sent.[2] Moreover, this language assumes that the recipient possesses awareness of some prior payment method; however, Plaintiff alleges that this was the first collection letter he received from Defendant. (*See* Compl. ¶ 9.) In other words, the letter presents Plaintiff with two *new* options of remitting payment without explaining that a previous method of payment (*i.e.*, one that does not impose any fee) remains available.

In sum, the Court concludes that Plaintiff's interpretation of the Collection Letter is neither bizarre nor idiosyncratic. Rather, viewed from the standpoint of the least sophisticated consumer, the structure and tone of the Collection Letter is potentially misleading with regard to whether the phone/online payment methods were optional services being offered for a separate fee and therefore distinct from the underlying debt. Specifically, it is not unreasonable to assume that a gullible consumer might conclude

---

[2] Although the Collection Letter is printed on Defendant's letterhead and includes a detachable form that the debtor must complete and return along with a check, the paragraph specifically discussing methods of payment neither lists a mailing address to which payment may be sent nor indicates to what entity checks should be made payable. Since the Collection Letter contains information about both the debt collector and the original creditor, it may be unclear to an unsophisticated consumer to which entity payment should be made. In this regard, the Court notes that the only phone number appearing in the Collection Letter is the 800 number to be used for payments; in the event the debtor attempts to contact Defendant for clarification or more information, he or she will automatically be directed to an automated system designed to process payments.

that telephonic or electronic payments are Defendant's preferred methods of payment or that, in contrast with past payment practice (about which a debtor receiving the instant letter for the first time would not be aware), payments should be made through Defendant's 800 number or website. Considering the consumer protection goals underscoring the FDCPA, the liberal construction afforded the statute, and drawing all inferences in Plaintiff's favor, the Court concludes that Plaintiff has also stated a claim under § 1692e(2).

## CONCLUSION

For the forgoing reasons, Defendant's motion to dismiss the Complaint (Docket No. 10) is DENIED. This matter is respectfully referred to the assigned magistrate judge, the Honorable Viktor V. Pohorelsky, for supervision of pretrial matters.

SO ORDERED.

Dated: Brooklyn, New York
September 23, 2010

_____
ROSLYNN R. MAUSKOPF
United States District Judge

9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

William ROZIER, on behalf of himself and            Case No. 10-cv-3273-DLI-JO
all others similarly situated,

                              Plaintiff,

          v.

FINANCIAL RECOVERY SYSTEMS, INC.,

                              Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

1283046_1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SOLOMON E. SHAMI,

             Plaintiff,

    - against -

NATIONAL ENTERPRISE SYSTEMS,

             Defendant.

------------------------------------------------------------X

MAUSKOPF, United States District Judge.

**MEMORANDUM & ORDER**
09-CV-722 (RRM) (VVP)

Plaintiff Solomon E. Shami ("Plaintiff") brings this putative class action against

Defendant National Enterprise Systems, Inc. ("Defendant"), alleging violations of the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* Before the

Court is Defendant's motion to dismiss the Complaint pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion is

DENIED.

### FACTUAL BACKGROUND

Plaintiff is a resident of New York who resides in Kings County and is a

"consumer" within the meaning of the FDCPA. Defendant is an Ohio-based company

regularly engaged in the collection of debts allegedly owed by consumers and is therefore

a "debt collector" within the meaning of the FDCPA. On October 6, 2008, Plaintiff

received a form collection letter from Defendant seeking to collect a debt allegedly

incurred by Plaintiff to a third-party that had subsequently been assigned to Defendant.

The letter stated, in pertinent part:

> You can now pay by automated phone system ... or on the
> internet. Transaction fees will be charged if you use the
> automated phone system or the internet to make payment

> on this account. You are not required to use the automated
> phone system or the internet to make payment on this
> account.

(*See* Def.'s Notice of Mot. (Docket No. 10), Ex. A (the "Collection Letter").)

On February 20, 2009. Plaintiff commenced this action alleging that the language

set forth above violated § 1692e of the FDCPA "by using false and deceptive means in

the collection of debt by making a false representation that it was entitled to receive

compensation for payment by automated phone system or the internet." (Compl. (Docket

No. 1) at ¶ 24.) Plaintiff further alleges that the Collection Letter violated § 1692f(1) of

the FDCPA "by collecting an amount that was not authorized by contract or permitted by

law." (*Id.* ¶ 25.)

## STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the

pleadings are closed—but early enough not to delay trial—a party may move for

judgment on the pleadings." The standard of review under a Rule 12(c) motion is the

same standard applicable to a Rule 12(b)(6) motion. *Sheppard v. Beerman*, 18 F.3d 147,

150 (2d Cir. 1994). To survive a Rule 12(b)(6) motion, a complaint must contain

"sufficient factual matter ... to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, --- U.S. ---, ---. 129 S. Ct. 1937, 1949 (2009). A court must "accept

as true all allegations in the complaint and draw all reasonable inferences in favor of the

non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517

F.3d 104, 115 (2d Cir 2008) In addition to considering the pleadings, the court may

consider "statements or documents incorporated by reference in the pleadings ... and

2

documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v Schaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

## DISCUSSION

One of the FDCPA's principal objectives is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The question of whether a debt collector's action violates the FDCPA is determined objectively from the viewpoint of the "least sophisticated consumer." *Savino v Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998). This standard is intended to protect "the gullible as well as the shrewd." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (citing *Cloman v. Jackson*, 988 F.2d 1314, 1318 (2d Cir 1993)). However, even in "crafting a norm that protects the naïve and the credulous," courts must "carefully preserve the concept of reasonableness." *Id.* Of course, the FDCPA does not provide relief for claims that are based on "bizarre or idiosyncratic interpretations of collection notices." *Cloman*, 988 F.2d at 1320.

### Plaintiff's Claim Under 15 U.S.C. § 1692f(1)

Section 1692f(1) of the FDCPA prohibits debt collectors from "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). The Second Circuit has held that "[t]he FDCPA prohibits (*inter alia*) a debt collector from collecting *any service charge* 'unless such amount is expressly authorized by the agreement creating the debt or permitted by law.'" *Tuttle v. Equifax Check*, 190 F.3d 9, 11 (2d Cir. 1999) (quoting 15 U.S.C. § 1692f(1)) (emphasis added). Therefore, "[u]nder the FDCPA, [a debt collector] may

3

impose a service charge if (i) the customer expressly agrees to the charge in the contract

creating the debt or (ii) the charge is permitted by law… In other words,

> *If state law expressly permits service charges*, a service
> charge may be imposed even if the contract is silent on the
> matter;
>
> *If state law expressly prohibits services charges*, a service
> charge cannot be imposed even if the contract allows it;
>
> *If state law neither affirmatively permits nor expressly
> prohibits service charges*, a service charge can be imposed
> only if the customer expressly agrees to it in the contract."

> *Id.* at 13 (citations omitted).

In this case, Defendant does not assert that the transaction fees described in the

Collection Letter were expressly authorized by the underlying agreement creating the

debt; nor does Defendant assert that these fees are otherwise permitted by New York law.

Defendant contends instead that § 1692f(1) itself is inapplicable because the phone and

online methods of payment are optional.

In the absence of direct support from the Second Circuit Court of Appeals or

guidance from district courts in this Circuit, Defendant principally relies an unpublished

opinion from the Central District of Illinois. *See Mann v. Nat'l Ass'n Mgmt. Enters., Inc*,

No. 04-1304 (C.D. Ill. Feb. 23, 2005). In *Mann*, a debt collector sent the plaintiff two

collection letters offering to settle outstanding credit card debt. *See* slip op. at 1. The

letters stated, in relevant part:

> If you have elected to make payments via our "check by
> phone" system, our office charges a convenience fee of
> $7.50 per transaction for this service. This fee is in
> addition to your actual payment and the fee will not be
> credited to your outstanding balance.

> *Id.* at 2.

4

The court observed that "the check-by-phone method of payment is presented as an option and the amount of the fee for the service is disclosed." *Id.* The court opined that "consumer harm seems nonexistent" and that a consumer "might actually want to pay for the check-by-phone option." *Id.* at 2-3. Specifically addressing Plaintiff's § 1692f(1) claim, the court relied on *Lewis v. ACB Bus. Servs., Inc.*, 911 F. Supp. 290 (S.D. Ohio 1996), and *Lee v. Main Accounts, Inc.*, 125 F.3d 855 (6th Cir. 1997) and, concluding that it was unclear that the optional payment method constituted a collection within the meaning of the FDCPA, dismissed the plaintiff's § 1692f(1) claim. *Id.* at 4. However, for the reasons set forth below, the Court finds *Mann's* reliance on the cases noted above misplaced and declines to adopt that court's ultimate conclusion.

In *Lewis*, the court reasoned that a payment option that imposed a processing fee in the event the debtor opted to make payment with an American Express moneygram did not violate § 1692f(1) because the debt collector itself would not receive any portion of the processing fee. *See Lewis*, 911 F. Supp. at 293-94. ("[Plaintiff's] claims were dismissed because the uncontradicted evidence proved that any such fee, voluntarily chosen by the debtor if he or she chose this payment option, *would not be paid to [defendant/debt collector] or any entity it controlled* and was a standard fee charged by the processor of the payment, an independent entity.") (emphasis added).

Similarly, in *Lee*, the court found that a five-percent "transaction fee" noted in a collection letter did not violate § 1692f(1) because the fee itself was imposed and collected by a third-party credit card processing company: thus, the debt collector itself did not receive any additional compensation in the event that the debtor voluntarily availed herself of the option to pay the debt with a credit card. *See Lee*, 125 F.3d at 855.

5

("[T]he five-percent transaction fee mentioned in the letter is not a fee collected by [the debt collector], but a *third-party charge* triggered when the debtor chose the option of paying by credit card ... and [the debt collector] would not have received any additional compensation from the credit card fee.") (emphasis added).

By contrast, in *Longo v. Law Office of Gerald E. Moore & Assocs, P.C.*, No. 04 C 5759 (N.D. Ill. Feb. 3, 2005), another unpublished case cited by Defendant, the court found that a collection letter offering the debtor the option of paying the debt by phone for a $7.50 fee violated § 1692f(1) because the fee was "incidental" to the underlying debt. *See* slip op, at 8. The court noted that the FDCPA does not specifically state how "incidental" a fee must be to fall outside its scope, but concluded that the liberal construction afforded the statute warranted that the fee be considered incidental to the claimed debt. *Id.* The court further noted that the collection letter at issue in that case did not list any other payment options and was geared "toward handling payment of the debt over the telephone." *Id.*

The Court concludes that Plaintiff has stated a claim under § 1692f(1). The court in *Longo* rested its decision on the FDCPA's prohibition on the collection of *any* fee in excess of the underlying debt unless authorized by prior agreement or state law. Likewise, this Court concludes that the fees outlined in the Collection Letter at issue, like the pay-by-phone fees discussed in *Longo*, are incidental to Plaintiff's purported actual debt. Next, it is unclear at this stage of this litigation whether the underlying contract between Plaintiff and the original creditor contemplated future transactional fees—that is, whether Plaintiff previously agreed to pay charges in excess of his actual debt in the

6

event that he defaulted under the agreement.[1]  Finally, there is no evidence that the fees at issue were simply Defendant's attempt to pass the costs of third-party charges to Plaintiff, or, as Plaintiff alleges, a method of obtaining increased compensation through the impermissible collection of service charges in addition to the underlying debt.

### Plaintiff's Claim Under § 1692e(2)

Section 1692e of the FDCPA prohibits debt collectors from employing "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e(2) prohibits "[t]he false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. 1692e(2). Plaintiff contends that Defendant violated § 1692e(2) by falsely representing in the Collection Letter that it was entitled to receive compensation for telephone and online payments. *(See* Compl. ¶ 24.)

Because the Court has concluded that Plaintiff has stated a claim under § 1692f(1) of the FDCPA, Plaintiff has also stated a claim under § 1692e(2). Specifically, if it is determined that the Collection Letter violates § 1692f(1) by representing that the transaction fees are permissible, Defendant also would be in violation of § 1692e(2). *See Longo,* slip op. at 10.

Moreover, several aspects of the Collection Letter suggest that it might be misleading to an unsophisticated consumer in other ways. First, unlike the fees at issue

---

[1] The actual Collection Letter that Plaintiff received has not been produced. Rather, Defendant has submitted a template version of the letter it presumably sent to Plaintiff. The template version does not include any information concerning the identity of the original creditor, the agreement between Plaintiff and the original creditor, the date the purported debt became due, or the total amount Defendant claims that Plaintiff owes.

in all of the cases discussed above, the Collection Letter in this case did not state how much Plaintiff might be charged in the event he used the phone or internet to pay his debt. Second, much like the letter at issue in *Longo*, the Collection Letter here appears designed to *encourage* its recipient to make payments telephonically or electronically, and thereby incur the transaction fee. Specifically, the paragraph outlining the debtor's payment options begins with a sentence announcing that the debtor "can now pay" via Defendant's "800" number and/or website address, but does not list a mailing address where payments may be sent.[2] Moreover, this language assumes that the recipient possesses awareness of some prior payment method; however, Plaintiff alleges that this was the first collection letter he received from Defendant. (*See* Compl. ¶ 9.) In other words, the letter presents Plaintiff with two *new* options of remitting payment without explaining that a previous method of payment (*i.e.*, one that does not impose any fee) remains available.

In sum, the Court concludes that Plaintiff's interpretation of the Collection Letter is neither bizarre nor idiosyncratic. Rather, viewed from the standpoint of the least sophisticated consumer, the structure and tone of the Collection Letter is potentially misleading with regard to whether the phone/online payment methods were optional services being offered for a separate fee and therefore distinct from the underlying debt. Specifically, it is not unreasonable to assume that a gullible consumer might conclude

---

[2] Although the Collection Letter is printed on Defendant's letterhead and includes a detachable form that the debtor must complete and return along with a check, the paragraph specifically discussing methods of payment neither lists a mailing address to which payment may be sent nor indicates to what entity checks should be made payable. Since the Collection Letter contains information about both the debt collector and the original creditor, it may be unclear to an unsophisticated consumer to which entity payment should be made. In this regard, the Court notes that the only phone number appearing in the Collection Letter is the 800 number to be used for payments, in the event the debtor attempts to contact Defendant for clarification or more information, he or she will automatically be directed to an automated system designed to process payments

8

that telephonic or electronic payments are Defendant's preferred methods of payment or that, in contrast with past payment practice (about which a debtor receiving the instant letter for the first time would not be aware), payments should be made through Defendant's 800 number or website. Considering the consumer protection goals underscoring the FDCPA, the liberal construction afforded the statute, and drawing all inferences in Plaintiff's favor, the Court concludes that Plaintiff has also stated a claim under § 1692e(2).

## CONCLUSION

For the forgoing reasons, Defendant's motion to dismiss the Complaint (Docket No. 10) is DENIED. This matter is respectfully referred to the assigned magistrate judge, the Honorable Viktor V. Pohorelsky, for supervision of pretrial matters.

SO ORDERED.

Dated: Brooklyn, New York
September 23, 2010

ROSLYNN R. MAUSKOPF
United States District Judge

9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

WILLIAM ROZIER, on behalf of himself and                    Case No. 10-cv-3273-DLI-JO
all others similarly situated,

Plaintiff,

v.

FINANCIAL RECOVERY SYSTEMS, INC.,

Defendant.

_____


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

1283046_1

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| Table of Authorities |  | 3 |
| Introduction |  | 5 |
| Facts |  | 5 |
| Legal Argument |  | 6 |
| I. Legal Standard. |  | 6 |
| | A. FDCPA Standard. | 7 |
| | B. FDCPA Sections. | 8 |
| | C. New York GBL § 349. | 8 |
| II. FRS Did Not Violate The FDCPA. |  | 9 |
| | A. FRS' Letter Set Forth the Amount of the Debt. | 9 |
| | B. FRS' Letter is Not Deceptive or Misleading. | 10 |
| III. FRS Did Not Violate New York GBL § 349. |  | 11 |
| IV. Plaintiff's Claim Is The Result "Of An Ingenious Misreading." |  | 12 |
| Conclusion |  | 14 |

## TABLE OF AUTHORITIES

Page

CASES:

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993)                                6

*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375 (2d Cir. 1995)                          6

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)                                                      6

*Ashcroft v Iqbal*, 129 S.Ct. 1937 (2009)                                                     6, 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)                                         6, 7

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126 (2d Cir. 2007)                       6

*Gavish v. Revlon*, Inc., 2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004)                          6-7

*Kropelnicki v. Siegel*, 290 F.3d 127 (2d Cir. 2001)                                          7

*Turner v. Asset Acceptance*, 302 F. Supp. 2d 56 (E.D.N.Y. 2004)                             7

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993)                                            7

*McStay v. I.C. System, Inc.*, 308 F.3d 188 (2d Cir. 2002)                                   7

*Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2003)                      7

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols*, 214 F.3d 872 (7th Cir. 2000)           9-10

*Weiss v. Zwicker & Associates PC*, 664 F. Supp. 2d 214 (E.D.N.Y. 2009)                      10

*Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)                                    11

*Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)                                    11

*Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007)                                11

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,                            11
85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995)

*Stutman v. Chem. Bank*, 95 N.Y.2d 24, 709 N.Y.S.2d 892 (2000)                               11, 12

*Genesco Entm't v. Koch*, 593 F. Supp. 743 (S.D.N.Y. 1984)                                   11

*Fava v. RRI, Inc.*, 1997 WL 205336 (N.D.N.Y. Apr. 24, 1997)                                 12

*S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629 (2d Cir. 1996)                    12

*White v. Goodman*, 200 F.3d 1016 (7th Cir. 2000)                                              12

*Taylor v. Cavalry Investment, LLC.*, 365 F.3d 572 (7th Cir. 2004)                        12

*Olson v. Risk Management Alternatives, Inc.*, 366 F. 3d 509 (7th Cir. 2004)          12

*Dewey v. Associated Collectors, Inc.*, 927 F.Supp. 1172 (W.D. Wis. 1996)          13

*Durkin v. Equifax Check Servs.*. 406 F.3d 410 (7th Cir. 2005)                            13

*Olvera v. Blitt & Gaines, P.C.* 431 F.3d 285, 289 (7th Cir. 2005)                      13

*Jacobson v. Healthcare Financial Services, Inc.*, 434 F. Supp. 2d 133                13-14
(E.D.N.Y. 2006)

*Federal Home Loan Mortgage Corp  v. Lerner, Sampson, Rothfuss, L.P.A.*,          14
503 F.3d 504 (6th Cir. 2007)

STATUTES and RULES

15 U.S.C. § 1692                                                                                          6, 8, 9, 10

New York GBL § 349                                                                                  6. 8, 11, 12

Fed. R. Civ. P. 12                                                                                        6

Fed. R. Civ. P. 8                                                                                          6

## INTRODUCTION

Defendant Financial Recovery Services, Inc.[1] ("FRS") respectfully submits this memorandum in support of its motion to dismiss. The claims set forth by the putative class action Complaint filed by Plaintiff William Rozier ("Plaintiff") are completely without merit and are the apparent result of a disingenuous reading of the collection letter upon which the complaint is based.

## FACTS[2]

On or about March 4, 2010 First Recovery[3] mailed, and Plaintiff received, a collection letter ("Letter"). Pl. Compl. ¶ 7 and Ex. A. The Letter set forth that:

> AS OF THE DATE OF THIS LETTER, YOU OWE $2,387.23. INTEREST, LATE CHARGES AND OTHER CHARGES MAY OR MAY NOT BE APPLICABLE TO THIS ACCOUNT. IF SOME OR ALL OF THESE ARE APPLICABLE TO YOUR ACCOUNT, THEY MAY VARY FROM DAY TO DAY AND THUS THE AMOUNT DUE ON THE DAY YOU PAY MAY BE GREATER. HENCE, IF YOU PAY THE AMOUNT SHOWN ABOVE, AN ADJUSTMENT MAY BE NECESSARY AFTER WE RECEIVE YOUR CHECK, IN WHICH EVENT WE WILL INFORM YOU BEFORE DEPOSITING THE CHECK FOR COLLECTION. FOR FURTHER INFORMATION, WRITE THE UNDERSIGNED OR CALL 1-866-211-0386.

*Id.* ¶ 9, Ex. A. Plaintiff asserts that the Letter fails to state the amount of the debt and fails to state whether or not interest and/or additional charges have been or will be applied to the debt. *Id.* ¶¶ 10-12. Accordingly, Plaintiff asserts that FRS violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e(2) and g(a), in addition to alleging that FRS violated New York GBL § 349.

---

Plaintiff's naming of "Financial Recovery Systems, Inc." as a defendant appears to be the result of a scrivener's error.

For purposes of this motion only, FRS accepts Plaintiff's version of the facts, while reserving its right to refute the same should this matter not be dismissed.

In his Complaint, Plaintiff alleges that an unknown entity, "First Recovery," mailed the initial letter to Plaintiff. However, for purposes of this motion, FRS assumes that Plaintiff meant to allege that FRS sent the letter, and that the mistake was caused by Plaintiff's counsel's reliance upon form pleadings.

## LEGAL ARGUMENT

### I.   LEGAL STANDARD.

On a motion to dismiss pursuant to Rule 12, all factual allegations are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 235-36 (1974)). However, while the pleading standard set forth in Rule 8 of the F. R. Civ. P. is a liberal one,

> the pleading standard Rule 8 announces . . . demands more than an
> unadorned, the-defendant-unlawfully-harmed-me accusation.   A
> pleading that offers labels and conclusion or a formulaic recitation
> of the elements of a cause of action will not do.  Nor does a
> complaint suffice if it tenders naked assertions devoid of further
> factual enhancement.

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal cites and quotes omitted). Thus, a complaint must allege sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In meeting this "plausibility standard," the plaintiff must demonstrate more than a "sheer possibility" of unlawful action; pleading facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (*quoting Twombly*, 550 U.S. at 557); *see also Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007) ("Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice. To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." (internal quotes and cites omitted)); *Gavish v. Revlon*, Inc., 2004 WL 2210269, at *10

1283046_1                                   6

(S.D.N.Y. Sept. 30, 2004) ("[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and will not defeat a motion to dismiss."). The factual allegations of a complaint must be enough "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Legal conclusions "couched as factual allegations" are not accepted as true. *Iqbal*, 129 S.Ct. at 1950.

## A. FDCPA Standard.

Courts within the Second Circuit use the least sophisticated consumer standard to determine if the FDCPA has been violated. *Kropelnicki v. Siegel*, 290 F.3d 127 (2d Cir. 2001); *see also Turner v. Asset Acceptance*, 302 F.Supp.2d 56, 58 (E.D.N.Y. 2004) (*citing Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993)). "The purpose of this standard is two-fold: '(1) [to] ensure the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices; and (2) [to] protect debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices.'" *Id.*

However, "the least sophisticated consumer standard incorporates a 'concept of reasonableness' that is presumed to guide even the most naive debtor." *McStay v. I.C. System, Inc.*, 308 F.3d 188, 191 (2d Cir.2002) (*citing Clomon v. Jackson*, 988 F.2d 1314. 1319 (2d Cir.1993)). Moreover. "even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon*, 988 F.2d at 1319.

Whether or not a collection letter violates the FDCPA is a question of law. *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2003) (upholding district court's finding that letter did not violate 15 U.S.C. §§ 1692e or 1692g as a matter of law).

## B.  FDCPA Sections.

Plaintiff asserts violations of the FDCPA, specifically 15 U.S.C. §§ 1692e(2)(A) and

g(a), which provide the following:

> A debt collector may not use any false, deceptive, or misleading
> representation or means in connection with the collection of any
> debt. Without limiting the general application of the foregoing, the
> following conduct is a violation of this section:

*     *     *

(2) The false representation of—

(A) the character, amount, or legal status of any debt

15 U.S.C. § 1692e(2)(A).

> Within five days after the initial communication with a consumer
> in connection with the collection of any debt, a debt collector shall,
> unless the following information is contained in the initial
> communication or the consumer has paid the debt, send the
> consumer a written notice containing—

(1) the amount of the debt.

15 U.S.C. § 1692g(a)(1).

## C.  New York GBL § 349.

In Count Three of the Complaint, Plaintiff asserts that FRS violated NY GBL § 349,

which prohibits deceptive acts or practices. However, Plaintiff does not set forth what provision

was violated, other than to assert that FRS engaged in deceptive acts and practices. Regardless,

Plaintiff has failed to request relief under Section 349 in his "Demand for Relief", thus leaving

one to guess whether or not Plaintiff intended to assert such a violation, or whether or not the

inclusion of the section was once again Plaintiff's counsel's reliance upon form pleadings.

## II. FRS DID NOT VIOLATE THE FDCPA.

As set forth above, Plaintiff alleges that the language in FRS' letter violates the FDCPA because it is deceptive in that it allegedly fails to set forth the amount of the debt, thus violating 15 U.S.C. §§ 1692e(2) and 1692g(a). However, it is clear that FRS complied with the FDCPA and Plaintiff's claims must be dismissed.

### A. FRS' Letter Set Forth the Amount of the Debt.

Plaintiff maintains that FRS' letter failed to set forth the amount of the debt and thus violated 15 U.S.C. § 1692g. In *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols*, 214 F. 3d 872 (7th Cir. 2000), the Seventh Circuit considered a similar claim brought under 1692g. As a result. the Seventh Circuit devised "safe harbor" language that it deemed to comply with the FDCPA. *Id.* Specifically, the Seventh Circuit held that the following language it crafted would not violate the FDCPA:

> As of the date of this letter, you owe $____ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800- [phone number].

*Id.*

The language used by FRS is based upon and nearly identical to that approved as safe harbor language by the Seventh Circuit in *Miller*. Below, again, is the language used by FRS, with the exception that the bracketed and underlined language has been inserted to show the similarities to that recommended in *Miller*.

> **As of the date of this letter, you owe $2,387.23.** [*Because of*] **Interest, late charges and other charges** may or may not be applicable to this account. If some or all of these are applicable to your account, they [*that*] **may vary from day to day and thus the**

1283046_1                                     9

> **amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-866-211-0386.**

Compl.. Ex. A. (emphasis added). The bolded language is language is the language used by FRS that is taken directly from *Miller*. Thus, the bolded language, with the bracketed, underlined language is identical to the *Miller* language. Accordingly, the only difference between FRS' language and the language in *Miller* is the omission of the three bracketed words and the inclusion of "may or may not be applicable to this account. If some or all of these are applicable to your account, they". The *Miller* court stated that "[n]o reasonable person could conclude that the statement that we have drafted does not inform the debtor of the amount due." *Miller*, 214 F.3d at 876. As the language included by FRS is nearly identical to that approved in *Miller*, no reasonable person could conclude that its language does not properly disclose the balance owing and Plaintiff's claim must be dismissed.

Accordingly, as FRS' Letter adheres to the safe harbor language provided in *Miller*, Plaintiff's claims should be dismissed.

### B.  FRS' Letter Is Not Deceptive or Misleading.

As set forth above, FRS' letter provided Plaintiff with the amount of the debt under 15 U.S.C. § 1692g. As such, FRS' letter cannot possibly be deceptive or misleading under § 1692e.

FRS' letter correctly sets forth that interest or other charges may or may not be applicable to Plaintiff's account. Without doubt, this is a true statement. Moreover, it has been held that even the least sophisticated consumer should know when interest applies to an account. *Weiss v. Zwicker & Associates PC*, 664 F. Supp. 2d 214, 217 (E.D.N.Y. 2009) ("[E]ven the most unsophisticated consumer would understand that credit card debt accrues interest.").

1283046_1                                              10

In this matter, FRS' letter sets forth that the creditor is Applied Bank, clearly indicating to all that given that the debt is for a failure to pay a credit account, interest will continue to accrue. As the *Weiss* court stated, "even the most unsophisticated consumer would understand that credit card debt accrues interest." Accordingly, as FRS provided Plaintiff with the balance owing and its language complied with the FDCPA, it was not deceptive or misleading and Plaintiff's claims should be dismissed.

## III.    FRS DID NOT VIOLATE NEW YORK GBL § 349.

Section 349 of New York's General Business Law declares that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful." N.Y. GEN. BUS. LAW § 349. A plaintiff stating a claim under Section 349 must allege that the defendant engaged in a materially misleading consumer-oriented act or practice that resulted in the plaintiff's injury. *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (*citing Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (*per curiam*)). An objectively misleading act is an act or omission that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *See Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (internal quotations omitted) (*quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 532-33 (1995)).

Once the plaintiff proves that the underlying relationship involved a "typical consumer transaction," he must establish a prima facie case under Section 349. *See Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892 (2000) (*citing Genesco Entm't v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984)). To make out a prima facie case, a plaintiff must show that the defendant "engag[ed] in an act or practice that is deceptive or misleading in a material way and

that [he] has been injured by reason thereof." *Id.* Accordingly, under this two-pronged analysis, the plaintiff must demonstrate: (1) that the defendant's representations or omissions were "likely to mislead a reasonable consumer acting reasonably under the circumstances"; and (2) that the deceptive act or practice caused "actual, although not necessarily pecuniary, harm." *Id.* at 26; *see also Fava v. RRI, Inc.*, 1997 WL 205336, at *5 (N.D.N.Y. Apr. 24, 1997).

Thus, unlike the least sophisticated consumer standard, a plaintiff alleging a Section 349 claim must demonstrate that "a reasonable consumer would have been misled by the defendant's conduct." *S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996) (citation omitted).

In this matter, as FRS has shown that Plaintiff's claims fail under the FDCPA and the least sophisticated consumer standard, Plaintiff's claims under Section 349, which are looked at from a reasonable consumer standard, fail and are subject to dismissal.

## IV. PLAINTIFF'S CLAIM IS THE RESULT "OF AN INGENIOUS MISREADING."

Plaintiff's claim is nothing more than an attempt by his counsel to extend the reach of the FDCPA to irrational levels. As the Seventh Circuit has succinctly stated, "The Act [FDCPA] is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it. The Act protects the unsophisticated debtor, but not the irrational one." *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000). Such "fantastic conjecture" by Plaintiff's counsel is insufficient to state a claim, *Taylor v. Cavalry Investment, LLC*, 365 F.3d 572, 574-575 (7th Cir. 2004), as even "an unsophisticated consumer, [is] able to make basic logical deductions and inferences" and to not interpret collection letters "in a bizarre or idiosyncratic fashion," as was done by Plaintiff and his counsel in the present matter. *See Olson v. Risk Management Alternatives, Inc.* 366 F. 3d 509, 513 (7th Cir. 2004).

The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors and to protect consumers from debt collection abuses. *See generally* 15 U.S.C. § 1692. However, the FDCPA was not enacted to provide a windfall to those who do not experience any abusive behavior. *Dewey v. Associated Collectors, Inc.*, 927 F.Supp. 1172, 1174 (W.D. Wis. 1996). Moreover, bizarre and idiosyncratic interpretations of the FDCPA or interpretations that provide a senseless result must be disregarded by the Court. *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 414 (7th Cir. 2005); *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. 2005).

As courts have noticed, the FDCPA is subject to abuses by consumers and their attorneys, as illustrated in the following passage:

> Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the individual who has been threatened or misled. The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation, 1977 U.S.C.C.A.N. 1695, 1696, nor to ferret out collection abuse in the form of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." *Id.* Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs.
>
> The statute need not be applied in this manner; and indeed, this Circuit has recognized that courts should not countenance lawsuits based on frivolous misinterpretations or nonsensical assertions of being led astray. In *Russell v. Equifax A.R.S.*, one of the most often quoted opinions on the "least sophisticated consumer" standard, the Circuit emphasized that "the test is how the least sophisticated consumer-one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer-understands the notice he or she receives." *Russell*, 74 F.3d at 34. This understanding of the least sophisticated consumer standard points away from closely parsing a debt collection letter

> like a municipal bond offering and towards a common sense
> appraisal of the letter.

> It is interesting to contemplate the genesis of these suits. The
> hypothetical Mr. Least Sophisticated Consumer ("LSC") makes a
> \$400 purchase. His debt remains unpaid and undisputed. He
> eventually receives a collection letter requesting payment of the
> debt which he rightfully owes. Mr. LSC, upon receiving a debt
> collection letter that contains some minute variation from the
> statute's requirements, immediately exclaims "This clearly runs
> afoul of the FDCPA!" and—rather than simply pay what he
> owes—repairs to his lawyer's office to vindicate a perceived
> "wrong." "[T]here comes a point where this Court should not be
> ignorant as judges of what we know as men." *Watts v. State of
> Ind.*, 338 U.S. 49, 52, 69 S.Ct. 1347, 1349, 93 L.Ed. 1801 (1949).

*Jacobson v. Healthcare Financial Services, Inc.*, 434 F. Supp. 2d 133, 138-39 (E.D.N.Y. 2006);

*see also Federal Home Loan Mortgage Corp. v. Lerner, Sampson, Rothfuss, L.P.A.*, 503 F.3d

504 (6th Cir. 2007) (*quoting Jacobson*).

The letter at issue in this matter is of the type referenced by the court in *Jacobson*,

considering that FRS' letter largely follows the *Miller* safe-harbor language, but we are to

believe that Plaintiff received the letter and exclaimed "This clearly runs afoul of the FDCPA!"

and—rather than simply pay what he owed—repaired to his lawyer's office to vindicate a

perceived "wrong." Regardless of how it occurred, Plaintiff's counsel's misreading of FRS'

Letter in an attempt to create a viable claim under the FDCPA is inappropriate. The claims in

the instant matter must be dismissed.

## CONCLUSION

Based on the foregoing arguments, this Court should dismiss Plaintiff's claims against

FRS pursuant to Fed. R. Civ. 12(b)(6).

Dated: Valhalla, New York
     August 30, 2010

                     /s/ Sergio Alves
                     Scott A. Schechter
                     Sergio Alves
                     KAUFMAN BORGEEST & RYAN LLP
                     Attorneys for Defendant
                     FINANCIAL RECOVERY SERVICES, INC.
                     200 Summit Lake Drive
                     Valhalla, New York 10595
                     Tel. (914) 449-1000
                     Fax (914) 449-1100
                     E-mail: sschechter@kbrlaw.com
                     E-mail: salves@kbrlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2010, the foregoing document was filed with the Clerk

of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the

Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service, upon

the following parties and participants:

Sergei Lemberg
LEMBERG & ASSOCIATES, LLC
Attorney for the Plaintiff
WILLIAM ROZIER
1100 Summer Street
Floor 3
Stamford, Connecticut 06905
Tel. (203) 653-2250
Fax (203) 653-3424
E-mail: slemberg@lemberglaw.com

/s/ Sergio Alves
Sergio Alves

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

WILLIAM ROZIER, on behalf of himself and                    Case No 10-cv-3273-DLI-JO
all others similarly situated,

                                    Plaintiff,

            v.

FINANCIAL RECOVERY SERVICES, INC.,

                                    Defendant.

_____


**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

## TABLE OF CONTENTS

|  | Page |
|---|---|
| Table of Authorities | 3 |
| Introduction | 4 |
| Facts | 4 |
| Standard | 4 |
| Legal Argument | 4 |
|    I.  FRS' Letter Complies With 15 U.S.C. §§ 1692g and 1692e;<br>     Plaintiff's Arguments to the Contrary Are Unavailing. | 4-7 |
|    II.  Plaintiff's Argument With Respect to the Application of the "Least<br>     Sophisticated Consumer" Standard is Unavailing. | 7-8 |
|    III.  The Second Circuit Did Not Reject the Portion of the *Jacobson*<br>     Opinion Quoted by FRS. | 8 |
| Conclusion | 8 |

## TABLE OF AUTHORITIES

Page

CASES:

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols*, 214 F. 3d 872 (7th Cir. 2000)     5-6

*Weiss v. Zwicker & Associates PC*, 664 F. Supp. 2d 214 (E.D.N.Y. 2009)     5-7

*Kolognov. v. Phillips & Cohen Associates, Ltd.*, No. 02-CV-3710,     5-7
2004 WL 958028 (E.D.N.Y. April 8, 2004)

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)     7

*Bell Atlantic Corp. v. Twombly*, 550 U.S 544 (2007)     7

*McMillan v. Collection Professionals, Inc.*, 455 F.3d 754 (7th Cir 2006)     8

*Taylor v. Cavalry Investment, LLC*, 365 F 3d 572 (7th Cir 2004)     8

*Jacobson v. Healthcare Financial Services, Inc.*, 434 F. Supp. 2d 133 (E.D.N.Y.     8
2006)

*Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85 (2d Cir. 2008)     8

STATUTES and RULES

15 U.S.C. § 1692     4-8

New York GBL § 349     4, 7

Fed. R. Civ. P. 12     4, 8

## INTRODUCTION

Defendant Financial Recovery Services, Inc. ("FRS") respectfully submits this reply memorandum in support of its motion to dismiss (the "Motion"). The claims set forth by the putative class action Complaint filed by Plaintiff William Rozier ("Plaintiff") are completely without merit and the arguments he raises in his opposition are unavailing for the reasons set forth below.

## FACTS[1]

FRS restates the facts as they are alleged in the Motion.

## STANDARD

FRS restates the legal standards for motions brought pursuant to Fed. R. Civ. P. 12(b)(6), FDCPA claims, and New York GBL § 349 claims as set forth in the Motion. Notably, both parties agree that FDCPA claims are governed by a "least sophisticated consumer" standard. (*See* Motion at p. 7, Plaintiff's Brief in Opposition to Defendant's Motion ("Opposition") at pp. 4-5.)

## LEGAL ARGUMENT

### I.    FRS' Letter Complies With 15 U.S.C. §§ 1692g and 1692e; Plaintiff's Arguments to the Contrary Are Unavailing.

As FRS explains in the Motion, the language used by FRS in its letter to Plaintiff (and, allegedly, in its letters to putative class members) clearly and unambiguously sets forth the amount of the debt and therefore complies with 15 U.S.C. § 1692g. Indeed, except for the omission of three non-critical words, and the insertion of a handful of words that, if anything,

---

[1]    As stated in the Motion at footnote no. 2, for purposes of the Motion only, FRS accepts Plaintiff's version of the facts, while reserving its right to refute the same should this matter not be dismissed.

serve to clarify the notice, FRS' language mirrors that approved as "safe harbor" language by the

Seventh Circuit in *Miller v. McCalla, Rayner, Padrick, Cobb, Nichols & Clark,* 214 F.3d 872

(7th Cir. 2000). *See* Motion at 9-10.

Plaintiff attempts to refute this conclusion by arguing that the language used by FRS is

more akin to language found to be violative of 15 U.S.C. § 1692g in *Weiss v. Zwicker &*

*Associates,* 664 F. Supp 2d 214 (E.D.N.Y. 2009), and *Kolognov v. Phillips & Cohen Associates,*

*Ltd.,* No. 02-CV-3710, 2004 WL 958028 (E.D.N Y. April 8, 2004). Both of these cases are

inapposite.

In *Weiss,* the relevant portion of the defendant's letter read as follows:

[a]s of the date of this letter, the balance on your account is $30,982.09. **Your balance may include** additional charges including delinquency charges, as applied at the direction of American Express, if said charges are permissible in accordance with the terms of your agreement.

*Weiss,* 664 F Supp. 2d at 215 (emphasis added). In finding that this language violated

§ 1692g(a)(1), the Court held that a consumer receiving a letter with such language "could

reasonably interpret the letter in two ways: it could be read to mean that the balance of

$30,982 09 already includes additional charges or it could be read to mean that the total balance

might eventually include certain additional charges." *Id* at 217.

For purposes of contrast, consider again the language in FRS's letter at issue in the

instant matter:

**As of the date of this letter, you owe $2,387.23. Interest, late charges and other charges** may or may not be applicable to this account. If some or all of these are applicable to your account, they **may vary from day to day and thus the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-866-211-0386.**

Compl , Ex. A. (Emphasis added.[2]) Unlike the language at issue in *Weiss*, the FRS language makes clear that the amount listed is the amount currently owed and that, if interest, late charges, or other charges are applicable, they are *additional* charges and that FRS will inform the debtor of such charges before depositing a check from the Debtor. Unlike in *Weiss*, there is no ambiguity as to whether the amount of debt set forth in the letter already includes the additional interest or other charges  It does not, and that is clear from the language of the letter; there is no colorable argument in favor of any other reading by even the most unsophisticated consumer. Indeed, the mere inclusion of additional language to the *Miller* language does not result in a *per se* violation. *See Miller*, 214 F.3d at 876 (debt collector may be subject to liability if it adds material to the safe-harbor language *that "confuse[s] the message"* (emphasis added))

The *Kolganov* court also considered whether a collector's letter violated 15 U.S C. § 1692g(a)(1). The language in question read:

> You are hereby notified that the above balance does not include the most recent charges assessed, any applicable over the limit fees, or your most recent daily interest charges. In order to obtain your most current balance information, please call 1-800-889-2223.

*Kolganov*, *supra*, 2004 WL 958028 at *3. The court held that "[l]isting a balance of $7,562.00 while simultaneously noting that additional fees and charges apply fails to state the debt owed. . . . The least sophisticated consumer could reasonably interpret [the defendant's] collection letter to have two different meanings regarding the size of the debt . . . ." *Id.* In *Kolganov*, the letter stated one amount on its face and then noted that that amount was not the actual amount due. *See id.* Such language *is* confusing, but it is easily distinguished from the language used by FRS, quoted above.

---

[2]   As in the Motion, the bolded language indicates that language which is identical to that approved as "safe harbor" language by the Seventh Circuit in *Miller*, 214 F.3d at 876

Plaintiff's attempt to conflate FRS' language with that used in *Weiss* and *Kolganov* must fail. Not only is the amount of the debt clearly stated, in compliance with 15 U.S.C. § 1692g, the letter is as also as such *a fortiori* in compliance with §1692e. To wit, because the amount of the debt is clearly stated, Plaintiff's argument that FRS' letter is false, deceptive and misleading in violation of §1692e(2) fails on its face. Although Plaintiff has not pleaded his NY GBL §349 claim with any specificity whatsoever, even if he had, Plaintiff's NY GBL §349 claim would fail for the same reasons; just as Plaintiff has failed to plead facts that give rise to a colorable FDCPA claim, so too does he fail to make out a claim under NY GBL §349 (which statute, notably, has a higher "reasonable consumer" standard). Under the applicable *Twombly/Iqbal* standard, Plaintiff has failed to allege sufficient facts to "state a claim to relief that is plausible on its face," on any of his three theories and Plaintiff's claims therefore fail as a matter of law. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).

## II.    Plaintiff's Argument with Respect to the Application of the "Least Sophisticated Consumer" Standard is Unavailing.

Plaintiff next tries to create an issue where none exists, claiming that FRS relies on an inapplicable series of decisions in its argument that Plaintiff's claim results from an "ingenious misreading" of the letter in question. *See* Opposition at 11-12. As Plaintiff notes, in all but the Seventh Circuit, the question of whether a dunning letter is confusing is considered to be one of law, rather than one of fact. *See id.* at 11, citing authority Plaintiff's "argument" has no purchase. The Seventh Circuit has recognized that its approach is not embraced by all circuits. *See, e.g., Taylor v. Cavalry Inv., LLC*, 365 F.3d 572, 575 (7th Cir. 2004); *McMillan v. Collection Professionals, Inc.*, 455 F 3d 754, 758 (7th Cir. 2006). If anything, Plaintiff's argument that whether the dunning letter is confusing is a question of law cuts in favor of dismissal. As

discussed above, Plaintiff has failed to allege facts that give rise to claims under the FDCPA or New York state law and his claims indeed fail as a matter of law

## III.    The Second Circuit Did Not Reject the Portion of the *Jacobson* Opinion Quoted by FRS.

Finally, Plaintiff takes issue with the portion of *Jacobson v. Healthcare Financial Services, Inc.*, 434 F Supp. 2d 133 (E D.N Y 2006) cited by FRS in the Motion. Although the Second Circuit did partially reverse the district court's decision, *see Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85, 91 (2d Cir. 2008), the reversal was limited to whether the validation notice contained in the dunning letter in question made clear the end date of the plaintiff's window to dispute the debt. *See Jacobson*, 516 F.3d at 93-95  Contrary to Plaintiff's assertion, the quoted portion of Judge Glasser's decision, which questions the logic and sincerity of certain "professional plaintiffs" claims, was not overruled. Rather, the quoted language (like that quoted in turn by Plaintiff) is *dicta*, and was quoted merely to illustrate the absurdity of claims like those made by Plaintiff. Plaintiff's attempt to misconstrue the weight of the authority quoted by FRS should not be countenanced by the Court.

## CONCLUSION

Based on the foregoing arguments, this Court should dismiss Plaintiff's claims against FRS pursuant to Fed R. Civ. 12(b)(6).

Dated:        Valhalla, New York
              September 27, 2010

                                        /s/ Sergio Alves
                                        Scott A. Schechter
                                        Sergio Alves
                                        KAUFMAN BORGEEST & RYAN LLP
                                        Attorneys for Defendant
                                        FINANCIAL RECOVERY SERVICES, INC

1298907_1                          -8-

200 Summit Lake Drive
Valhalla, New York 10595
Tel. (914) 449-1000
Fax (914) 449-1100
E-mail: sschechter@kbrlaw.com
E-mail: salves@kbrlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2010, the foregoing document was filed with the

Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or

the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service,

upon the following parties and participants·

Sergei Lemberg
Stephen Taylor
LEMBERG & ASSOCIATES, LLC
Attorneys for the Plaintiff
WILLIAM ROZIER
1100 Summer Street, Floor 3
Stamford, Connecticut 06905
Tel. (203) 653-2250
Fax (203) 653-3424
E-mail. slemberg@lemberglaw.com
E-mail: staylor@lemberglaw.com

/s/ Sergio Alves
Sergio Alves