UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NICOLA LIANTONIO, JR., on behalf of himself and all others similarly situated,

                Plaintiff,

- against -

JOEL W. LAVINTMAN D/B/A
GOGGINS & LAVINTMAN, P.A.,

                Defendant.

Case No. 2:11-cv-1292-SJF-AKT

---

**REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(c) OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

**INTRODUCTION**

Defendant Goggins & Lavintman, P.A. ("Defendant"), incorrectly named Joel W. Lavintman d/b/a Goggins & Lavintman, submits this reply ("Reply") to the Response ("Opposition") of Plaintiff Nicola Liantonio, Jr. ("Plaintiff") to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Motion"). Plaintiff submitted his Opposition and a cross-motion to amend his complaint in the form of a single brief. This Reply is limited to a discussion of the arguments raised by Plaintiff in opposition to Defendant's Motion to Dismiss Plaintiff's current complaint. Defendant will address Plaintiff's motion to amend his complaint in a separate response.

**FACTS**

Defendant is a law firm that specializes in the collection of debts from consumers. Answer, Ex. A, Affidavit of Joel Lavintman ("Lavintman Aff.") ¶ 4. Its place of business is

located in Minnesota. *Id*. Defendant does not currently, nor has it ever, maintained offices in any other state. *Id*.

On August 13, 2010, the date of the Letter (defined below), Defendant's policy and procedure with respect to debts placed with it for collection was that it would deposit all checks it received from debtors exclusively at one of several Wells Fargo Bank, N.A. ("Wells Fargo") branch offices, all located in Minnesota. *Id*. at ¶ 5. Defendant did not and does not deposit checks it receives from consumers at any banks or locations outside of Minnesota. *Id*.

Defendant presents all checks it receives from consumers for payment in Minnesota. *Id*. at ¶ 6. Further, Defendant only provides consumers with a Minnesota address for mailing payments to Defendant. *Id*. at ¶ 7. If a check received from a consumer and presented for payment at Wells Fargo is dishonored and returned to Defendant by Wells Fargo, a service charge of $30 is added to the returned check and, if warranted, Defendant seeks to impose additional civil penalties as permitted by Minn. Stat. § 604.113, Subd. 2. *Id*. at ¶ 8.

Plaintiff owed a debt to Midwest Recovery Fund ("MRF") in the amount of $296.77 ("Debt"). Compl. ¶ 3, Ex. A. Defendant, on behalf of MRF, sought to collect the Debt from Plaintiff. *Id*. at ¶¶ 3, 10. On or about August 13, 2010, Defendant mailed a collection letter ("Letter") to Plaintiff. *Id*. at ¶ 11. The Letter included the following conspicuously posted notice ("Notice"):

> Notice: A service charge of $30 will be added on all returned checks to this office. Additional civil penalties may be imposed for nonpayment. Minn. Stat. § 604.113, Subd. 2.

*Id*. at ¶ 12, Ex. A.

On March 17, 2011, Plaintiff filed his current complaint ("Complaint"). Doc. No. 1. In his Complaint, Plaintiff acknowledges that the language set forth above may be sufficient for Minnesota consumers. Compl. ¶ 13. However, Plaintiff alleges that because he is a New York

resident, the language deceptively and falsely threatened that Defendant could impose a fee of $30.00 for a returned check when the maximum that could be imposed under New York law is $20.00. *Id*. at ¶ 16. Thus, Plaintiff alleges that the Letter violates sections 1692e, 1692e(5) and 1692e(10) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. *Id*. at ¶¶ 13-16.

## LEGAL ARGUMENT

### I. LEGAL STANDARD.

The legal standards upon which this Reply is based are set forth in Defendant's Motion and are incorporated herein by reference.

### II. DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT SHOULD BE GRANTED.

Plaintiff raises four arguments in his Opposition to Defendant's Motion. Plaintiff argues that he is not seeking an advisory opinion in this case. Plaintiff also argues that New York law governs this dispute, and the service charge in the Notice exceeds the maximum amount permitted by New York law. In addition, Plaintiff argues that, even if Minnesota law governs, the Notice was not conspicuously posted as required by Minnesota law. Last, Plaintiff argues that the Motion should be denied at this time pursuant to Federal Rule of Civil Procedure 56(d) because Plaintiff requires additional information to respond to the Motion.[1]

As set forth below, Plaintiff's arguments are meritless. Defendant fully complied with applicable law in this matter, that being Minnesota law. Discovery will not bolster Plaintiff's claims. Plaintiff's Opposition is nothing more than an effort to confuse the issues in this case.

---

[1] Plaintiff cites to Federal Rule of Civil Procedure 56(f) in support of his request for additional time to conduct discovery. However, Federal Rule 56(f) was changed to Federal Rule 56(d) in the April 2010 amendments to Federal Rule 56, which went into effect on December 1, 2010. As such, Defendant assumes that where Plaintiff cited to Federal Rule 56(f), he meant Federal Rule 56(d).

1632184

Plaintiff's attempt to muddy the waters should not be countenanced. As such, the Court should grant Defendant's Motion and enter judgment in its favor on all claims in Plaintiff's Complaint.

### A. Plaintiff is Seeking an Advisory Opinion.

In his Opposition, Plaintiff argues that he is not seeking an advisory opinion in this matter. In support of this argument, Plaintiff relies on cases finding an FDCPA violation where the collector threatened to collect amounts that were not authorized by the agreement or applicable law, such as *Shami v. Nat'l Enter. Sys.*, slip. op., 09-cv-722 (E.D.N.Y. Sept. 23, 2010), and *Larsen v. JBC Legal Group, P.C.*, 533 F. Supp. 2d 290 (E.D.N.Y. 2008). As set forth below, Plaintiff's argument is misplaced.

Here, Defendant's Letter provided that Defendant would seek to collect $30 and additional civil penalties if a check it received from a consumer was dishonored. Unlike in *Shami* and *Larsen*, the fees and penalties set out in the Letter are expressly authorized by Minnesota law. As such, *Shami* and *Larsen* are inapplicable. Nevertheless, Plaintiff asks this Court to render an opinion whether Minnesota or New York law would apply to the purely hypothetical scenario where, after receiving Defendant's Letter, Plaintiff makes a payment by check to Defendant, the check is dishonored, and Defendant imposes a $30 service charge on the returned check. That is an advisory opinion that Defendant submits the Court should refuse to render. *See, e.g., U.S. Nat'l Bank v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993) ("The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy, and a federal court lacks the power to render advisory opinions."). Indeed, there is no case or controversy in this matter. Plaintiff does not allege, nor can he allege, that he attempted to make a payment by check to Defendant or that any such payment was dishonored. As such, there was no service charge incurred by Plaintiff nor did he suffer any harm whatsoever by the language at issue in Defendant's Letter.

If the Court decides that it is prohibited from rendering an advisory opinion in this case, it should, in turn, determine that Minnesota law presumptively governs because Defendant relied upon a Minnesota statute in setting the service charge it would add on all returned checks.  *See* Compl., Ex. A (citing to Minn. Stat. § 604.113, Subd. 2); *see also* Answer, Lavintman Aff. ¶ 8.

### B.   Minnesota Law Related To Service Charges For Dishonored Checks Should Govern In This Case.

As set forth in Defendant's Motion, the Court should presumptively apply Minnesota law to determine whether the Letter contains false, deceptive or misleading information.  However, if the Court determines that a choice of law analysis is appropriate, it should nonetheless determine that Minnesota law governs.  In choice of law disputes, New York courts apply the law of the jurisdiction with the most significant contacts to the case.  *See Bianco v. Erkins*, 243 F.3d 599, 607-08 (2d Cir. 2001); *see also J&B Schoenfeld Fur Merchants, Inc. v. Kilbourne & Donohue, Inc.*, 704 F. Supp. 466, 468 (S.D.N.Y. 1989).  The Uniform Commercial Code, as adopted by New York, incorporates New York's most significant contacts test.  *See J&B Schoenfeld*, 704 F. Supp. at 468; *Lakhany v. Anzelone*, 788 F. Supp. 160, 162 (S.D.N.Y. 1992).  For the reasons set forth below and in Defendant's Motion, the Court should determine that Minnesota has the most significant contacts to this case.

Defendant's Motion details the extensive contacts between Minnesota and this dispute.  Suffice it to say, the most *significant* contacts take place in Minnesota.  To be sure, this case turns on whether Defendant threatened an impermissible service charge for dishonored checks.  Defendant learns whether a service charge is warranted when a check it receives from a consumer is presented, dishonored and returned to Defendant.  Defendant provides consumers with a Minnesota address for mailing payments to it.  All of those contacts take place in Minnesota.  The only contact this case has to New York is that Plaintiff alleges to be a resident

5

of that state. "It is well established, however, that the plaintiff's residence, with nothing more, is insufficient to support the choice of a state's law." *Gardner v. Simon*, 445 F. Supp. 2d 786, 789 (W.D. Mich. 2006); *see also Home Ins. Co. v. Dick*, 281 U.S. 397, 408 (1930); *Brooks v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 62 N.J. 583, 586 (N.J. 1973).

Plaintiff advances several arguments in an attempt to overcome the inevitable conclusion that Minnesota law governs. First, Plaintiff argues, "upon information and belief," that the underlying agreement creating the account upon which the debt was incurred does not specify that Minnesota law applies. Opp. at 6. Plaintiff does not allege, however, that the underlying agreement specifies that New York law governs. Indeed, Plaintiff does not even attach a copy of the agreement to his Memorandum nor set forth the factual basis for his conclusion that Minnesota law does not govern the underlying agreement As such, Plaintiff's argument is nothing more than an attempt to avoid dismissal. Even if the agreement creating the debt did specifically state that Minnesota law does not govern the agreement, the Second Circuit has made clear that "New York law allows a court to disregard the parties' choice when the 'most significant contacts' with the matter in dispute are in another state." *Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991). As set forth above, the most significant contacts in this case are in Minnesota.[2]

For the purposes of the instant matter, the terms of the underlying agreement giving rise to the debt are not controlling. The tendering of sufficient funds by Plaintiff to Defendant for payment of a debt is a wholly separate and distinct agreement performed between these two parties only. The charge imposed for the tendering of insufficient funds arises not from the

---

[2] Defendant submits that it should not be bound by a choice of law provision to which it did not agree. Accordingly, to the extent that a choice of law provision was included in the underlying agreement, it should be disregarded for purposes of the instant dispute.

6

contract with the original creditor but from the agreement between Plaintiff and Defendant for payment of sufficient funds. As such, Minnesota law should govern.

Second, Plaintiff argues, without citation to any authority, that New York state law governs its residents, and as a matter of New York law, one cannot charge a New York resident a service fee in excess of $20 for a dishonored check. Plaintiff's argument puts the cart before the horse. It is true that New York law caps the service charge for a dishonored check at $20. However, the service fee that may be imposed under the circumstances of this case will be a function of the body of law that governs. If, as Defendant argues, Minnesota law governs, then Defendant is permitted to impose a $30 service charge on Plaintiff, an alleged New York resident.

Third, Plaintiff argues that New York law should govern because Defendant directed its contact into the State of New York by sending the Letter to Plaintiff. This is a "purposeful availment" argument. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). Plaintiff therefore appears to confuse choice of law analysis with personal jurisdiction (minimum contacts) analysis. However, "choice of law analysis is distinct from minimum contacts analysis," *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 923 (8th Cir. 1995), and a choice of law analysis clearly weighs in favor of application of Minnesota law in this case.[3]

Fourth, Plaintiff argues that section 1692i of the FDCPA dictates a finding that New York law governs here. Plaintiff's argument is misplaced. Section 1692i provides guidance regarding the judicial district in which a debt collector may bring a legal action on a debt. It says nothing whatsoever about the law that governs in the event of a choice of law dispute regarding

---

[3] Even utilizing Plaintiff's flawed minimum contacts argument, the tendering of a dishonored check (which would trigger the $30 charge) by a consumer to Defendant in Minnesota would constitute a contact with Minnesota.

1632184

the contents of a letter sent to a consumer outside of a lawsuit.  As such, Plaintiff's argument is without merit.

For the reasons set forth above and in the Motion, the Court should determine that Minnesota law governs this dispute.

C. **Defendant's Letter Did Not Violate the FDCPA.**

According to applicable authority, whether or not a collection letter violates the FDCPA is a question of law.  *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2003) (upholding the district court's finding that the letter did not violate 15 U.S.C. §§ 1692e or 1692g as a matter of law).  In his current Complaint, Plaintiff alleges that the Letter violates sections 1692e, 1692e(5), and 1692e(10) of the FDCPA.  Those sections prohibit the use of false, deceptive, or misleading collection methods, and the threat to take any action that cannot legally be taken or is not intended to be taken  *See* 15 U.S.C. §§ 1692e, e(5), and e(10).  As set forth in detail in the Motion, the Letter did not violate these FDCPA provisions.

In his Opposition, Plaintiff argues, for the first time, that the Notice is not posted conspicuously in the Letter as required by Minnesota law, and the Letter thus violates the FDCPA.  However, the Notice is printed in the same size font as the body of the Letter.  As such, there is nothing inconspicuous about the Notice.  Even assuming, *arguendo*, that the Notice was not posted conspicuously, courts have routinely held that "an alleged violation of state or local law … is insufficient to state a claim under the FDCPA."  *Richardson v. AllianceOne Receivables Mgmt., Inc.*, 2004 WL 867732, at *2 (S.D.N.Y. April 23, 2004); *see also Carlson v. First Revenue Assurance*, 359 F.3d 1015 (8th Cir. 2004); *Wade v. Regional Credit Assoc.*, 87 F.3d 1098 (9th Cir. 1996).

For example, in *Richardson v. AllianceOne Mgmt., Inc.*, *supra*, the plaintiff (also represented by Plaintiff's counsel) filed a class action suit against a debt collector.  *Richardson*,

8

2004 WL 867732, at *1.  The plaintiff alleged that the collector violated section 1692e of the FDCPA, specifically, e(5) and e(10), by sending a collection letter that failed to include the collector's New York City license number as required by a City ordinance.  *Id*.  The court granted the collector's Rule 12(c) motion to dismiss the case.  *Id*.  In doing so, the court determined that the collector's failure to include its license number in the collection letter did not render the letter false, deceptive, or misleading within the meaning of the FDCPA.  *Id*. at *3.  According to the court, "the contention that every violation of state law raises a federal claim under the FDCPA reflects a false, narrow, and overly mechanical reading of the statute."  *Id*.

As in *Richardson*, there is nothing false, misleading, or deceptive about Defendant's Letter.  Nor does the Letter threaten action that cannot legally be taken or is not intended to be taken.  Moreover, the Notice is posted conspicuously and even assuming that it was not, the directive of *Richardson* dictates that the alleged technical violation of Minnesota law is insufficient to breathe life into Plaintiff's dying FDCPA claims.

### D. Additional Time to Conduct Discovery Before Ruling on the Motion is Not Warranted.

Plaintiff alleges that he requires additional information to respond to Defendant's Motion.  As such, Plaintiff argues that the Motion should be denied at this time pursuant to Rule 56(d).[4]  That rule provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a summary judgment motion], the court may:
>
> (1)   defer considering the motion or deny it;
> (2)   allow time to obtain affidavits or declarations or to take discovery; or
> (3)   issue any other appropriate order.

Fed. R. Civ. P. 56(d).

---

[4] In Plaintiff's Opposition, Plaintiff cites to Federal Rule of Civil Procedure 56(f).  *See* Opp. at 12.

In support of his argument, Plaintiff alleges that he requires discovery to determine the circumstances under which Defendant imposes a $30 service charge or other civil penalties for dishonored checks. However, Rule 56(d) does not mandate a denial of Defendant's Motion.

In making a request under Rule 56(d), the opposing party must "demonstrate how discovery will provide rebuttal to the movant's claims." *Alexander v. Pathfinder, Inc.*, 189 F.3d 735, 744 (8th Cir. 1999) (discussing former Rule 56(f)). The party seeking a continuance "must do more than simply assert that it may discover additional facts, and must do more even than speculate about what those facts might be." *EEOC v. Am. Home Prods. Corp.*, 199 F.R.D. 620, 631 (N.D. Iowa 2001). Rather, the party "must demonstrate specifically how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996) (*quoting Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975), *cert. denied*, 424 U.S. 915 (1976)).

The reason for the foregoing requirements is that it is well settled that Rule 56(d) does not condone a fishing expedition where a plaintiff merely hopes to uncover some possible evidence of unlawful conduct. *See, e.g., Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997). Indeed, the Rule "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *Small Bus. Admin. v. C.E. Light*, 766 F.2d 394, 397 (8th Cir. 1985). Thus, "[a] party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits as otherwise required by [former] Rule 56(e) and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Id*. at 397-98 (*quoting Wilmar Poultry*,

*supra*, at 297). Furthermore, "the court does not abuse its discretion to deny discovery before ruling on a motion for summary judgment if the facts the party seeking a continuance believes it can obtain would not prevent the entry of summary judgment." *Am. Home Prods.*, 199 F.R.D. at 632.

Here, Plaintiff alleges that he requires discovery to determine the circumstances under which Defendant imposes a $30 service fee and other civil penalties for dishonored checks. Discovery into this issue is not necessary to resolve Plaintiff's case as alleged in his current Complaint. Indeed, the only unlawful conduct alleged by Plaintiff in his current Complaint is that Defendant deceptively and falsely threatened that Defendant could impose a $30 service fee when the maximum that could be imposed under New York law is $20. Resolution of this issue turns exclusively on whether New York or Minnesota law governs this dispute. As set forth above and in the Motion, Minnesota law governs. Defendant fully complied with that body of law. Plaintiff cannot defeat Defendant's properly supported dispositive motion by pulling factual allegations out of thin air, altering the claims asserted by Plaintiff in his Complaint or by asserting baseless claims with the hope that further discovery will prove them to be true.[5]

Plaintiff is requesting the Court's permission to go on a fishing expedition in an attempt to manufacture claims where none exist. The Court should not allow Plaintiff to do so. Accordingly, the Court should deny Plaintiff's request for additional time to conduct discovery.

---

[5] Indeed, in an apparent attempt to overcome Defendant's Motion, Plaintiff conveniently makes several factual allegations in his proposed amended complaint "upon information and belief." Plaintiff fails, however, to provide any evidentiary basis for this allegedly newly-acquired knowledge. Plaintiff also fails to explain why he did not include these allegations in his current Complaint. The Court should not countenance Plaintiff's pleading tactics.

## **CONCLUSION**

Based on the arguments in this Reply and in Defendant's Motion, the Court should dismiss all claims in Plaintiff's current Complaint pursuant to Federal Rule 12(c) or, in the alternative, grant summary judgment in favor of Defendant pursuant to Federal Rule 56.


Dated:  Valhalla, New York
        September 6, 2011

                                                  /s/  Sergio Alves
                                        Sergio Alves
                                        KAUFMAN BORGEEST & RYAN LLP
                                        Attorneys for Defendant
                                        GOGGINS & LAVINTMAN, P.A.
                                        200 Summit Lake Drive
                                        Valhalla, New York 10595
                                        Phone: (914) 449-1000
                                        Fax: (914) 449-1100
                                        E-mail: salves@kbrlaw.com

1632184

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2011, the foregoing document was served via First Class Mail, postage prepaid, upon the following parties and participants:

Adam J. Fishbein, Esq.
Attorney for the Plaintiff
NICOLA LIANTONIO, JR.
483 Chestnut Street
Cedarhurst, NY 11516

                                                  /s/ Sergio Alves
                                            Sergio Alves